ARCTIC STRUCTURES, INC., Glenn Sinclair and Brown & Root, Inc., Petitioners/Cross-respondents,

v.

Jack WEDMORE, Carol Wedmore, Home Insurance Company and Alaska Totem Electrical Enterprises, Inc., Respondents/Cross-petitioners.

Nos. 3633, 3654.

Supreme Court of Alaska.

Dec. 21, 1979.

Richard J. Smith, Bradbury & Bliss, Anchorage, for Arctic Structures and Glenn Sinclair.

John L. Orlandini, Murphy L. Clark, Anchorage, for Brown & Root, Inc.

Douglas J. Serdahely, Libbey & Serdahely, Anchorage, for Jack and Carol Wedmore.

Sanford M. Gibbs, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, for Alaska Totem Elec. Enterprises and Home Ins. Co.

## OPINION

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR, and BURKE, JJ., and ROWLAND, Superior Court Judge.

RABINOWITZ, Justice.

Jack Wedmore sustained personal injuries while working on the North Slope of Alaska on November 7, 1974. On that date, Wedmore was an employee of Alaska Totem Electrical Enterprises, Inc., the electrical sub-contractor employed on a construction project by the general contractor, Arctic Structures, Inc. Arctic Structures was employed in turn by B. P. Alaska, Inc., the project owner. Brown & Root, Inc. also was under contract with B. P. Alaska to provide project management services in the

development of the North Slope, and Glenn Sinclair was a supervising employee of Arctic Structures.

Jack and Carol Wedmore, plaintiffs below, alleged that Jack Wedmore was injured by falling fifteen to twenty feet from a scaffolding or platform supported by the forks of a lift-truck at a Prudhoe Bay warehouse then under construction. The Wedmores further alleged that Brown & Root and B. P. Alaska were occupying the warehouse in a joint and common economic venture at the time; that the various defendants provided the scaffolding and safety inspections; that defendant Arctic Structures negligently failed to furnish a safe scaffolding platform; and that Brown & Root expressly warranted the safety of the scaffolding which was in fact dangerously defective such that injury resulted. Carol Wedmore alleged loss of consortium, both past and future.

Petitioners Arctic Structures and Glenn Sinclair, brought a petition for review asking this court to review two interlocutory orders issued by the superior court. The first order granted the motion of Jack and Carol Wedmore to strike an affirmative defense in the answer of Brown & Root which basically urged the abolition of the rule of joint and several liability in Alaska.[1] In the second, the superior court denied Arctic Structure's motion for leave to amend its answer to assert affirmative defenses similar to those asserted by Brown & Root.[2]

The first issue addressed in this opinion is whether the liability of multiple third-party defendants in an action by a plaintiff-employee who sustained on the job injuries to which both the plaintiff's employer and third-party defendants negligently contributed should be apportioned on the basis of fault or several liability. Petitioners appropriately concede that the present law with regard to joint and several liability in Alaska comports with the questioned orders of the superior court which struck Brown & Root's defense based on several liability and which denied Arctic Structures' motion to amend its answer to include the same de-

1. The affirmative defense which was struck from Brown & Root's answer to the amended complaint was the following:

Defendant Brown & Root, Inc. denies that it was negligent, but if it is found that it was negligent, then defendant Brown & Root, Inc. asserts that the negligence of other parties to this litigation proximately caused plaintiffs' damages and defendant Brown & Root, Inc.'s liability to plaintiffs, if any, should not exceed the percentage of negligence attributable to defendant Brown & Root, Inc. Thus, if the fact finder determines that, for example, Brown & Root, Inc.'s negligence amounted to 10% of the total negligence which proximately caused plaintiffs' damages, then defendant Brown & Root, Inc. is liable to plaintiffs for only 10% of their damages.

2. The affirmative defenses which petitioner Arctic Structures sought to add included its theory of several liability (Affirmative Defense IV) and the doctrine of *Witt v. Jackson*, 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961) (Affirmative Defense III), a California case which held that a negligent employer may not be indemnified by, and the plaintiff-employee may not recover from, third-party defendants that sum which the employer paid the employee under the Workmen's Compensation statute. The proposed third affirmative defense read:

Plaintiff JACK WEDMORE's employer was negligent thereby causing plaintiff's injuries and reducing the recovery of ALASKA TOTEM ELECTRICAL ENTERPRISES, INC., and/or HOME INSURANCE COMPANY, if any, and reducing plaintiffs' JACK WEDMORE's and CAROL WEDMORE's recoveries, if any.

The fourth affirmative defense stated:

Defendants ARCTIC STRUCTURES, INC., and GLENN SINCLAIR deny that they were negligent, but if it is found that they were negligent, then defendants, ARCTIC STRUCTURES, INC., and GLENN SINCLAIR assert that the negligence of other parties to this litigation proximately caused plaintiffs' damages and defendants ARCTIC STRUCTURES, INC. and GLENN SINCLAIR's liability to plaintiffs, if any, should not exceed the percentage of negligence attributable to defendants, ARCTIC STRUCTURES, INC., and GLENN SINCLAIR. Thus, if the fact finder determines that, for example, ARCTIC STRUCTURES, INC., and GLENN SINCLAIR's negligence amount to 10% of the total negligence which proximately caused plaintiffs' damages, then defendants, ARCTIC STRUCTURES, INC., and GLENN SINCLAIR, are liable to plaintiffs for only 10% of their damages.

fense.[3] Nevertheless, petitioners argue that the common law imposes no constraints on judicial adoption of the rule of several liability, particularly since the practical and moral bases for joint and several liability of concurrent tortfeasors have been eroded by this court's adoption of comparative negligence as the appropriate rule for apportioning damages in tort actions.

In *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), this court adopted the rule of comparative negligence. In so doing, we rejected arguments that fault cannot be measured on a scientific basis, that contributory negligence is a deterrent to careless conduct, that comparative negligence doctrine is difficult for courts to administer, and that settlement of negligence cases is encouraged by virtue of the existence of the contributory negligence rule.[4] In abandoning the rule of contributory negligence in favor of comparative negligence, this court was primarily concerned with the inequity of requiring an injured plaintiff to bear damages far in excess of his or her own measure of fault simply because the plaintiff was less than completely free of negligence.[5]

Petitioners Arctic Structures and Glenn Sinclair argue that the comparative negligence rule adopted in *Kaatz* should be extended to the apportionment of damages between multiple defendants and they urge this court to limit the liability of each defendant in the case at bar proportionately to its degree of fault. In response to the original common law doctrine of joint and several liability and a marked judicial reluctance to permit contribution between tortfeasors even where independent but concurrent negligence contributed to a single injurious result,[6] numerous contributory negligence jurisdictions have passed statutes which, to a greater or lesser extent, allow contribution among tortfeasors.[7] Alaska is one of those states which has adopted a "Uniform Contribution Among Tortfeasors Act," AS 09.16.010–.060 which provides for pro rata contribution among tortfeasors found jointly or severally liable for the

---

3. *Lucas v. City of Juneau*, 127 F.Supp. 730, 15 Alaska 413 (D.Alaska 1955), decided that multiple tortfeasors are jointly and severally liable for the full amount of damages where consecutive or concurrent acts of negligence combine to produce a single injury.

4. With respect to these arguments, we stated in *Kaatz v. State*, 540 P.2d 1037, 1048 (Alaska 1975) (footnotes omitted):

Although jurors' verdicts are not precisely scientific, an allocation of proportionate fault approaches reality more closely than the total loss or victory represented by the contributory negligence rule. As to the deterrent effect of the contributory negligence rule, Dean Prosser points out that the law must also aim to deter wrongful conduct by defendants and not only plaintiffs. Judicial administration of the rule has not presented insuperable difficulties in those jurisdictions which have long employed it. Experience has not borne out the argument that comparative negligence is difficult for courts and juries to apply.

Similarly, careful studies tend to show that settlement of cases can be achieved as readily under the comparative negligence system as under the contributory negligence rule. Studies have also shown that the effect of the comparative negligence rule on insurance rates is minimal.

5. In this regard, we quoted from *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 862–863, 532 P.2d 1226, 1230–31 (1975) (footnotes omitted), where the California Supreme Court wrote:

It is unnecessary for us to catalogue the enormous amount of critical comment that has been directed over the years against the 'all-or-nothing' approach of the doctrine of contributory negligence. The essence of that criticism has been constant and clear: the doctrine is inequitable in its operation because it fails to distribute responsibility in proportion to fault. Against this have been raised several arguments in justification, but none have proved even remotely adequate to the task. The basic objection to the doctrine—grounded in the primal concept that in a system in which liability is based on fault, the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness.

*Quoted in Kaatz v. State*, 540 P.2d 1037, 1048 (Alaska 1975). *See also* W. Prosser, Law of Torts § 67, at 433 (4th ed. 1971).

6. W. Prosser, Law of Torts § 850, at 306 (4th ed. 1971). As of 1971, Prosser wrote that only nine American jurisdictions had allowed contribution among tortfeasors without legislation to that effect.

7. *See* Prosser, *id.* at 307.

same injury to person or property. In light of the foregoing, the question thus presented to this court with respect to changing the existing common law rule of joint and several liability is whether a rule of several liability would contravene the intentions of the Alaska legislature in enacting the Contribution Among Tortfeasors Act.

■ The Alaska Uniform Contribution Among Tortfeasors Act was adopted at a time when contributory negligence and no right of contribution was the law in Alaska.[8] Section 09.16.010(a) of the Alaska act provides:

> *Right to contribution.* (a) Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

The statutory right of contribution is expressly limited to the pro rata share of the common liability and "[n]o tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability."[9]

In determining the tortfeasors' pro rata shares, "their relative degrees of fault shall not be considered;"[10] however, "principles of equity applicable to contribution generally shall apply."[11] The comments of the Commissioners on Uniform State Laws in regard to the Uniform Contribution Among Tortfeasors Act upon which the Alaska act is based indicate that a deliberate decision was made not to consider comparative negligence or degrees of fault in contribution cases. The comment to Uniform Contribution Among Tortfeasors Act § 2 (section 09.16.020(1) of the corresponding Alaska act) states that "the exclusion of intentional, willful and wanton actors from the right to contribution eliminates the better arguments for a relative degree of fault rule."[12] Though the Judiciary Committee of the Alaska House of Representatives apparently disagreed with the Uniform Commissioners on this issue at one point,[13] the Alaska statute, as enacted, follows the exact language of the Uniform Act with respect to pro rata contribution. The principles of equity which apply through section 2(c) of the Uniform Act (section 09.16.020(3) of the corresponding Alaska statute) were intend-

---

**8.** The House Judiciary Committee Report on the bill which became the Contribution Among Tortfeasors Act indicates that the Act was based on the 1955 version of the Uniform Contribution Among Tortfeasors Act:

> This bill proposes the adoption of the Uniform Contribution Among Tortfeasors Act, prepared by the National Conference of Commissioners on Uniform State Laws in 1955. The national conference's prefatory note to this Act states in part:
>
> 'This uniform act establishes the right of a person liable for damages for an unintentional wrong to compel others, who are liable with him for the same damages, to share in discharging the common liability.
>
> 'Under the existing law an injured person may select whom he wishes to sue from among those jointly liable to him for an injury. He need not sue all. He may settle out of court or he may sue all and collect the full amount of the judgment from one. Under the prevailing law rule there is no recourse by one who voluntarily pays or who is forced to pay the common liability, against the others who are equally liable to the injured party but who have escaped payment.
>
> 'This act would distribute the burden of responsibility equitably among those who are

jointly liable and thus avoid the injustice often resulting under the common law.'
1970 House Journal 437.

**9.** AS 09.16.010(b).

**10.** AS 09.16.020(1).

**11.** AS 09.16.020(3).

**12.** Uniform Contribution Among Tortfeasors Act (U.L.A.) § 2, at 87 and Commissioners' Comment (1975). *See also* Comment to § 1(c) at 65.

**13.** The House Judiciary Committee Report states that:

> The Judiciary Committee amendment would require each tortfeasor's share of the liability to be based on his relative degree of fault. After a review of the official comments accompanying the uniform Act and of the relevant pages of the transcript of the meeting of the national conference's committee which wrote this Act, the Judiciary Committee is unconvinced of the need to prohibit the degrees of fault from being considered (as is done in the original version).
1970 House Journal at 438.

ed to govern contribution when one defendant is found to be insolvent, and were not intended to affect the requirement that relative degrees of fault are not to be considered as a factor in the apportionment.[14]

Despite the express language of the Alaska act requiring pro rata distribution of liability for damages among concurrent tortfeasors, petitioners contend that the underlying purpose of the act was the fair and equitable treatment of multiple defendants rather than pro rata sharing, and that the pro rata method was chosen because it was the only method of apportionment thought workable or judicially acceptable before comparative negligence had become accepted as a basis for apportioning damages. Petitioners therefore urge this court to adopt judicially the rule of several liability in recognition of the changed approach to liability for negligence brought about by *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), and to effect the legislative intent to achieve an equitable result even though the literal statutory language lends itself to the opposite outcome.[15]

Petitioners further assert that apportioning liability based on fault can be reconciled with the provision of the Alaska Uniform Contribution Among Tortfeasors Act governing releases from liability. AS 09.16.040 provides:

*Release or covenant not to sue.* When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death,

(1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

Petitioners focus on the "good faith" requirement in the release provision and argue:

Adequate recognition of *all* the purposes of the statute, in the greatly changed circumstances of comparative negligence commends that the court construe the good faith provision of AS 09.16.040 to require that the amount of reduction of the claim in AS 09.16.040(1) against the remaining defendants means a reduction by the amount of liability which would have been visited upon that settling party as a result of apportioning liability based on fault had the settling party remained available to answer any eventual judgment.[16]

Though the common law rule of joint and several liability does impose the risk of uncollectibility upon the solvent defendants, we are not convinced that as a general rule the alternative, which would cast the total risk of uncollectibility upon the injured plaintiff, is an improvement. In assessing the advisability of such a change, we think it significant that the National Conference of Commissioners on Uniform State Laws has declined to abolish joint and several liability in the Uniform Comparative Fault Act which was approved by the National

---

**14.** Uniform Contribution Among Tortfeasors Act (U.L.A.) § 2, at 87–88 and Commissioners' Comment (1975).

**15.** *See Cooper v. Argonaut Ins. Co.*, 556 P.2d 525, 526 (Alaska 1976) ("While grammatically the disputed phrase lends itself more to the second construction . . . we feel that the first alternative more accurately conforms to the legislative intent."). *See also Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); 2A C. Sands, Sutherland Statutory Construction § 45.05, at 16 (4th ed. 1973).

**16.** *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 408–11, 95 S.Ct. 1708, 1714–1716, 44 L.Ed.2d 251, 260–62 (1975) (replacing the rule of divided damages in admiralty actions with a rule requiring, whenever possible, the allocation of damages in proportion to the relative fault of the parties involved. The Supreme Court found no reason that the adoption of the new rule should impede out of court settlements).

Conference in 1977. Rather, that act adopts a compromise position requiring contribution among multiple defendants based on relative degrees of fault and allowing reallocation of the damages where the obligation of a defendant proves uncollectible. The commissioners' comment regarding this matter of apportionment states:

> The common law rule of joint-and-several liability of joint tortfeasors continues to apply under this Act. This is true whether the claimant was contributorily negligent or not. The plaintiff can recover the total amount of his judgment against any defendant who is liable.

> The judgment for each claimant also sets forth, however, the equitable share of the total obligation to the claimant for each party, based on his established percentage of fault. This indicates the amount that each party should eventually be responsible for as a result of the rules of contribution. Stated in the judgment itself, it makes the information available to the parties and will normally be a basis for contribution without the need for a court order arising from motion or separate action.

> Reallocation of the equitable share of the obligation of a party takes place when his share is uncollectible.

Reallocation takes place among all parties at fault. This includes a claimant who is contributorily at fault. It avoids the unfairness both of the common law rule at joint-and-several liability, which would cast the total risk of uncollectibility upon the solvent defendants, and of a rule abolishing joint-and-several liability, which would cast the total risk of uncollectibility upon the claimant.[17]

The case law with regard to joint and several liability in jurisdictions which have adopted a comparative negligence system should not be rejected merely because of the change of comparative negligence.[18] Although a few comparative negligence jurisdictions have legislatively abolished joint and several liability,[19] it is notable that we can find no state in which a statutory scheme of joint and several liability has been judicially modified or abolished.[20] Even more significant, two states other than Alaska have judicially (as opposed to legislatively) adopted comparative negligence, have expressly addressed the issue of retention of joint and several liability and have upheld the continued validity of the doctrine subsequently.

In Florida, *Hoffman v. Jones*, 280 So.2d 431 (Fla.1973), replaced the old common law rule of contributory negligence with the principles of comparative negligence. At the time *Hoffman* was decided, Florida had

---

**17.** Uniform Comparative Fault Act (U.L.A.) § 2, Comment at 30 (Supp.1979).

It is apparent that the Commissioners of Uniform State Laws considered and rejected petitioners' argument that the adoption of comparative negligence doctrine requires the abolishment of joint and several liability. Though the Alaska legislature has not adopted the Uniform Comparative Fault Act and it therefore is not dispositive of the legislative intent in the present case, the existence of the compromise solution does undercut petitioners' policy arguments on this point.

**18.** *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979) (joint and several liability of a shipowner for 90% of damages to a stevedore firm's employee injured while unloading the boat, even though the stevedore firm was 70% comparatively negligent. The decision was based on interpretation of the Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b)).

**19.** These states include Kansas (Kan.Rev.Stat. Ann. § 60–258a(d)); Nevada (Nev.Rev.Stat. § 41.141, subd. 3); New Hampshire (N.H.Rev. Stat.Ann. § 507:7–a); Vermont (Vt.Stat.Ann., Tit. 12, § 1036).

**20.** *See* V. Schwartz, *Li v. Yellow Cab Company: A Survey of California Practice Under Comparative Negligence*, 7 Pac.L.J. 747, 764 (1976). *See also* M. Raskoff, *Comparative Negligence in California: Multiple Party Litigation*, 7 Pac.L.J. 771, 772 (1976).

The Supreme Court of Wisconsin did alter a common law rule of equal contribution among tortfeasors after the judicial adoption of a comparative negligence doctrine to allow contribution based on percentage of causal negligence attributable to each tortfeasor. *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962). No statutory pro rata contribution among tortfeasor's act was in effect in Wisconsin at the time of the *Bielski* decision, however.

not adopted the Uniform Contribution Among Torfeasors Act, and it retained the original common law rule of no contribution among multiple defendants found to be jointly and severally liable for commission of a tort.[21] Subsequently, the Florida legislature enacted the Uniform Contribution Among Tortfeasors Act in 1975, including its provision for pro rata apportionment of damages among concurrent tortfeasors.[22] The Florida Supreme Court has since then had occasion to rule on a trial court's apportionment of damages among multiple defendants based on the jury's assessment of the percentage of fault attributable to each. In *Lincenberg v. Issen*, 318 So.2d 386, 393 (Fla.1975), the court held:

> The trial court by allocating damages on the basis of percentage of fault acted inconsistently with the new law since said act specifically provides for contribution on a pro rata basis with the relative degrees of fault *not* to be considered.

The court further stated:

> The plaintiff is entitled to a measurement of his full damages and the liability for these damages should be apportioned in accordance with the percentage of negligence as it relates to the total of all the defendants. The negligence attributed to the defendants will then be apportioned on a pro rata basis without considering relative degrees of fault although the multi-party defendants will remain jointly and severally liable for the entire amount.[23]

Thus, the Florida court was able to reconcile the doctrine of comparative negligence with retention of the rule of joint and several liability and the enactment by the Florida legislature of the Uniform Contribution Among Tortfeasors Act.

The Supreme Court of California also has directly addressed this issue.[24] *Li v. Yellow Cab Company*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), abrogated the doctrine of contributory negligence in California and replaced it with a comparative negligence rule of liability. In deciding the comparative negligence issue, the court expressly declined to address the issue of liability of multiple parties since it was not before the court in the *Li* case. *Id.* 119 Cal.Rptr. at 871, 532 P.2d at 1239. Subsequently, the appellate courts in California

---

**21.** In these circumstances the Florida Supreme Court explained the purposes of the adoption of the comparative negligence rule as follows:

(1) To allow a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury; and

(2) To apportion the total damages resulting from the loss or injury according to the proportionate fault of each party.

*Hoffman v. Jones*, 280 So.2d 431, 439 (Fla. 1973).

**22.** Fla.Stat. § 768.31 (1975).

**23.** *Lincenberg v. Issen*, 318 So.2d 386, 393–94 (Fla.1975). The court explained its interpretation of the Uniform Contribution Among Tortfeasors Act provisions relating to determination of pro rata liability for damages as follows:

The Act retains the full, joint, and several liability of joint tortfeasors to the plaintiff, and provides for contribution between them on a pro rata basis. In determining pro rata shares of the tortfeasors in the entire liability, this law provides:

'(a) There relative degrees of fault shall not be considered;

'(b) If equity requires the collective liability of some as a group shall constitute a single share; and

'(c) *Principles of equity applicable to contribution generally shall apply.'*

*Id.* at 392–93 (emphasis supplied).

**24.** Pro rata sharing of damages by concurrent tortfeasors through contribution was established by a contribution statute adopted in California in 1957 entitled "Releases From and Contribution Among Joint Tortfeasors." Cal. Code of Civ.Proc. 875 *et seq.* . *See Safeway Stores, Inc. v. Nest-Kart*, 63 Cal.App.3d 934, 134 Cal.Rptr. 150, 153 (1976), *vacated*, 21 Cal.3d 322, 146 Cal.Rptr. 550, 579 P.2d 441 (1978).

split on the resolution of the question of several liability where multiple parties were involved.[25] The California Supreme Court recently resolved the conflict in appellate court decisions in *American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). There the court expressly upheld the continuing validity of joint and several liability after the adoption of comparative negligence. The court stated:

> [W]e conclude that our adoption of comparative negligence to ameliorate the inequitable consequences of the contributory negligence rule does not warrant the abolition or contraction of the established 'joint and several liability' doctrine; each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury. Contrary to petitioner's contention, we conclude that joint and several liability does not logically conflict with a comparative negligence regime. Indeed, as we point out, the great majority of jurisdictions which have adopted comparative negligence have retained the joint and several liability rule; we are aware of no judicial decision which intimates that the adoption of comparative negligence compels the abandonment of this long-standing common law rule. The joint and several liability doctrine continues, after *Li*, to play an important and legitimate role in protecting the ability of a negligently injured person to obtain adequate compensation for his injuries from those tortfeasors who have negligently inflicted the harm.[26]

---

**25.** *See American Motorcycle Ass'n v. Superior Court*, 65 Cal.App.3d 694, 135 Cal.Rptr. 497 (1977), *vacated*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978); *Safeway Stores, Inc. v. Nest-Kart*, 63 Cal.App.3d 934, 134 Cal.Rptr. 150 (1976), *vacated*, 21 Cal.3d 322, 146 Cal. Rptr. 550, 579 P.2d 441 (1978); *Stambaugh v. Superior Court*, 62 Cal.App.3d 231, 132 Cal. Rptr. 843 (1976).

**26.** *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 184, 578 P.2d 899, 901 (1978). The court explained in detail its reasoning for reaching these conclusions:

> First, the simple feasibility of apportioning fault on a comparative negligence basis does not render an indivisible injury 'divisible' for purposes of the joint and several liability rule. As we have already explained, a concurrent tortfeasor is liable for the whole of an indivisible injury whenever his negligence is a proximate cause of that injury. In many instances, the negligence of each of several concurrent tortfeasors may be sufficient, in itself, to cause the entire injury; in other instances, it is simply impossible to determine whether or not a particular concurrent tortfeasor's negligence, acting alone, would have caused the same injury. Under such circumstances, a defendant has no equitable claim vis a vis an injured plaintiff to be relieved of liability for damage which he has proximately caused simply because some other tortfeasor's negligence may also have caused the same harm. In other words, the mere fact that it may be possible to assign some percentage figure to the relative culpability of one negligent defendant as compared to another does not in any way suggest that each defendant's negligence is not a proximate cause of the entire indivisible injury.

> Second, abandonment of the joint and several liability rule is not warranted by AMA's claim that, after *Li*, a plaintiff is no longer 'innocent.' Initially, of course, it is by no means invariably true that after *Li* injured plaintiffs will be guilty of negligence. In many instances a plaintiff will be completely free of all responsibility for the accident, and yet, under the proposed abolition of joint and several liability, such a completely faultless plaintiff, rather than a wrongdoing defendant, would be forced to bear a portion of the loss if any one of the concurrent tortfeasors should prove financially unable to satisfy his proportioned share of the damages.

> Moreover, even when a plaintiff is partially at fault for his own injury, a plaintiff's culpability is not equivalent to that of a defendant. In this setting, a plaintiff's negligence relates only to a failure to use due care for his own protection, while a defendant's negligence relates to a lack of due care for the safety of others. Although we recognized in *Li* that a plaintiff's self-directed negligence would justify reducing his recovery in proportion to his degree of fault for the accident, the fact remains that insofar as the plaintiff's conduct creates only a risk of self-injury, such conduct, unlike that of a negligent defendant, is not tortious.

> Finally, from a realistic standpoint, we think that AMA's suggested abandonment of

The court therefore concluded that, after *Li*, "a concurrent tortfeasor whose negligence is a proximate cause of indivisible injury remains liable for the total amount of damages, diminished only 'in proportion to the amount of negligence attributable to the person recovering.'" *American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 189–190, 578 P.2d 899, 906–07 (1978), quoting *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 875, 532 P.2d 1226, 1243 (1975). In our opinion, the reasoning of *American Motorcycle Association* is persuasive for retention of the joint and several liability rule.[27] In light of Alaska's existing pro rata legislative scheme for apportionment of damages among joint tortfeasors and the public policies implemented by the legislation,[28] we hold that the common law rule of joint and several liability should not be judicially modified.[29]

This brings us to the second issue presented in this petition, namely, whether third-party defendants in a tort action may reduce their total liability to the plaintiff-employee in proportion to the percentage of negligence attributable to the plaintiff's employer. Petitioner Brown & Root argues that the fact that Jack Wedmore's employer, Totem Electrical Enterprises, Inc., already had paid the statutorily defined amount of worker's compensation to him does not relieve the employer of responsibility for its proportion of negligence in causing the injury. Thus, even though the employer cannot be required to contribute further to the damages the employee is entitled to receive,[30] Brown & Root argues that third-party defendants are entitled to a reduction of liability in proportion to the

---

the joint and several liability rule would work a serious and unwarranted deleterious effect on the practical ability of negligently injured persons to receive adequate compensation for their injuries. One of the principal byproducts of the joint and several liability rule is that it frequently permits an injured person to obtain full recovery for his injuries even when one or more of the responsible parties do not have the financial resources to cover their liability. In such a case the rule recognizes that fairness dictates that the 'wronged party should not be deprived of his right to redress,' but that '[t]he wrongdoers should be left to work out between themselves any apportionment.' The *Li* decision does not detract in the slightest from this pragmatic policy determination.

*Id.*, 146 Cal.Rptr. at 188–189, 578 P.2d at 905–06 (citations omitted) (footnote omitted).

**27.** However, we have considered and reject judicial creation of a partial indemnity rule of law, adopted by the California Supreme Court in *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 195, 578 P.2d 899, 912 (1978).

**28.** *See* note 26 *supra*.

**29.** *See State v. Guinn*, 555 P.2d 530, 547 n.42 (Alaska 1976) (recognizing that judicial adoption of the doctrine of comparative negligence in *Kaatz v. State*, 540 P.2d 1037, 1042 (Alaska 1975), will require legislative amendment of Alaska's Uniform Contribution Among Tortfeasors Act).

**30.** The Alaska Workmen's Compensation Act, AS 23.30.005–.270, provides that the employer's liability for workmen's compensation awards is exclusive.

In this regard, AS 23.30.055 states:

*Exclusiveness of liability.* The liability of an employer prescribed in § 45 of this chapter is exclusive and in place of all other liability of the employer and any fellow employee to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death. However, if an employer fails to secure payment of compensation as required by this chapter, an injured employee or his legal representative in case death results from the injury may elect to claim compensation under this chapter, or to maintain an action against the employer at law or in admiralty for damages on account of the injury or death. In that action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

AS 23.30.170 sets forth the rates of compensation by which an employer's liability to an employee injured on the job is determined for purposes of the workmen's compensation statute.

percentage of fault attributable to the plaintiff's employer. While one foundation for this claim is the several liability argument we have rejected above, Brown & Root also raises constitutional issues of due process and equal protection.

Essentially, Brown & Root claims that the combination of the doctrine of joint and several liability as it applies to third-party defendants, and the lack of availability of pro rata contribution from a negligent employer under the Alaska Uniform Contribution Among Tortfeasors Act, AS 09.16.-010–.060, because of the limited, exclusive liability of an employer under the Alaska Workmen's Compensation Act,[31] deprives it of access to the courts to raise the defense of the employer's negligence under the due process and equal protection clauses of the state and federal constitutions.[32]

▉▉▉▉ What procedural due process may require under any particular set of circum-stances depends on the nature of the governmental function involved and the private interest affected by the governmental action.[33] While it is manifest that no one has a vested right in any particular mode of procedure such that legislative change is prohibited, due process does require that a substantial and efficient remedy remains available or that one be provided when a preexisting defense is statutorily limited.[34] In the present case, however, it is doubtful whether the defense of a co-defendant's negligence ever has been available separately from its relationship to the lack of negligence on the part of the defendant asserting the claim.[35] Under the common law of Alaska prior to enactment of the Uniform Contribution Among Tortfeasors Act, a concurrently negligent defendant was entitled to no contribution from other negligent parties.[36] The Contribution Among Tortfeasors Act introduced the concept of pro rata contribution among tort-

---

**31.** *Id.*

**32.** Alaska Constitution art. I, §§ 1 and 7; U.S. Constitution, Amends. V, XIV.

**33.** *See, e. g., Fireman's Fund Ins. Co. v. Arizona Ins. Guaranty Ass'n*, 22 Ariz.App. 453, 528 P.2d 839 (1974), *vacated* 112 Ariz. 7, 536 P.2d 695 (1975); *Aguchak v. Montgomery Ward Co., Inc.*, 520 P.2d 1352, 1357 (Alaska 1974) ("Whenever a party demonstrates a prima facie denial of due process of law, the reviewing court must balance the interest of the state in the act or procedure challenged against the right denied the individual."). *See also Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *Bush v. Reid*, 516 P.2d 1215 (Alaska 1973).

**34.** *See American Surety Co. v. Baldwin*, 287 U.S. 156, 168, 53 S.Ct. 98, 102, 77 L.Ed. 231, 239 (1932); *Jones v. Hildebrant*, 191 Colo. 1, 550 P.2d 339 (1976); *State v. Griffith*, 97 Idaho 52, 539 P.2d 604 (1975).

**35.** *See Lindsey v. Normet*, 405 U.S. 56, 68–69, 92 S.Ct. 862, 871–872, 31 L.Ed.2d 36, 48 (1972) ("The substantive law of landlord-tenant relations differs widely in the various States. . . . There is no showing that Oregon excludes any defenses it recognizes as "available" on the three questions (physical possession, forcible withholding, legal right to possession) at issue in [a suit under the Oregon Forcible Entry and Wrongful Detainer Statute]").

**36.** *See note 8 supra.* It should be noted here that contribution and indemnity constitute two distinct concepts of allocation of damages among tortfeasors.

> In traditional terms, the apportionment of loss between multiple tortfeasors has been thought to present a question of contribution; indemnity, by contrast, has traditionally been viewed as concerned solely with whether a loss should be entirely shifted from one tortfeasor to another, rather than whether the loss should be shared between the two.

*American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 190, 578 P.2d 899, 907 (1978) (citations omitted). Thus, Brown & Root's citations to *Sunspan Eng'r & Const. Co. v. Spring-Lock Scaffolding Co.*, 310 So.2d 4 (Fla.1975), and *Carlson v. Smogard*, 298 Minn. 362, 215 N.W.2d 615 (1974), for the proposition that the adoption of an exclusive liability statute which abolishes the common law right of a third party to sue for indemnity is unconstitutional as denying access to the courts is not applicable to the present case. This court has not yet passed on the question of whether a third party may recover indemnification from an employer in the absence of a contractual relationship, given the exclusive remedy provision of the Workmen's Compensation Act. *Golden Valley Elec. Ass'n, Inc. v. City Elec. Serv., Inc.*, 518 P.2d 65, 69 n.16 (Alaska 1974).

feasors but it did not abrogate the doctrine of joint and several liability which ultimately makes each concurrently negligent defendant liable for the whole of the plaintiff's loss where the co-defendants turn out to be insolvent. Since we have held that judicial adoption of comparative negligence does not disturb the continuing validity of joint and several liability, we conclude that petitioners have not been deprived of any "available" defenses by the refusal of the superior court to allow them to present the employer's negligence as a partial defense to liability.[37]

■ Brown & Root's equal protection claim is based on the differential treatment of tortfeasors who become involved in employee-employer tort claims as compared to all other tortfeasors. Only the former are prohibited from securing pro rata contribution from their concurrently negligent co-defendants, when the co-defendant in question happens to be the employer of the injured plaintiff. Review of equal protection challenges is governed by the standards set out in *State v. Erickson*, 574 P.2d 1 (Alaska 1978).[38] The purpose of the Workmen's Compensation Act, including the exclusive liability provision attacked by Brown & Root in this action, is the provision of financial and medical benefits for victims of work-connected injuries in the most efficient, most dignified, and most certain form.[39] In accomplishing the goal of securing adequate compensation for injured employees without the expense and delay inherent in a determination of fault as between the employee and employer, the legislature apparently also found it necessary to limit the total amount of the employer's liability to the statutory award.[40] We have concluded that there is a fair and substantial relationship between the legislative objective of providing guaranteed, expeditious compensation to the injured employee and the limitation on the employer's total liability regardless of its percentage of fault,

---

**37.** Brown & Root also asserts a denial of substantive due process in its brief to this court. The test for upholding the exclusive liability provision of the Workmen's Compensation Act against a challenge on substantive due process grounds is whether the legislative enactment has a reasonable relationship to a legitimate governmental purpose. *Concerned Citizens of So. Kenai Pen. v. Kenai Pen. Borough*, 527 P.2d 447, 452 (Alaska 1974); *Mobil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 101 (Alaska 1974). The "reasonable relationship" test is satisfied in the present case by the purposes of the worker's compensation scheme, including the "exclusive liability" provision:

> The ultimate social philosophy behind compensation liability is belief in the wisdom of providing, in the most efficient, most dignified, and most certain form, financial and medical benefits for the victims of work-connected injuries which an enlightened community would feel obligated to provide in any case in some less satisfactory form, and of allocating the burden of these payments to the most appropriate source of payment, the consumer of the product.

1 A. Larson, Workmen's Compensation Law § 2.20, at 5 (1972), *quoted in Wright v. Action Vending Co.*, 544 P.2d 82, 86–87 (Alaska 1975).

**38.** *State v. Erickson*, 574 P.2d 1, 12 (Alaska 1978), requires an evaluation of the purposes of the challenged statutory scheme, the means used to accomplish those legislative objectives, and a balancing of relative necessity for utilizing the particular means selected against the nature of the interest which is interfered with.

> Such a test will be flexible and dependent upon the importance of the rights involved. Based on the nature of the right, a greater or lesser burden will be placed on the state to show that the classification has a fair and substantial relation to a legitimate governmental objective. Where fundamental rights or suspect categories are involved, the results of this test will be essentially the same as requiring a 'compelling state interest'; but, by avoiding outright categorization of fundamental and non-fundamental rights, a more flexible, less result-oriented analysis may be made.

*Id.* at 12.

**39.** *Wright v. Action Vending Co.*, 544 P.2d 82, 86–87 (Alaska 1975). *See* note 37 *supra.*

**40.** *See Haman v. Allied Concrete Products, Inc.*, 495 P.2d 531, 535 (Alaska 1972) ("The exception to the Alaska Compensation Act's exclusive remedy provision [for injuries resulting from defective or insufficient machinery] urged by the Hamans would seriously undermine, if not engulf, the comprehensiveness of that system of compensation."). *See also* 1 A. Larson, Workmen's Compensation Law § 2.40, at 10 (1978 and Supp.1979) ("In compensation, unlike tort, the only injuries compensated for are those which produce disability and thereby presumably affect earning power.").

even though that limitation has the effect of denying the third-party tortfeasors the right to pro rata contribution from the employer.[41]

The final question to be addressed in this case is whether, as a matter of law, Jack Wedmore's employer or its worker's compensation insurance carrier is entitled to reimbursement from the third-party defendants for compensation paid to the plaintiff-employee under the Alaska Workmen's Compensation Act. Section 23.30.015 of that act creates an insurance carrier's lien on damages recovered by an injured plaintiff-employee against third party tortfeasors. Specifically AS 23.30.015(g) provides:

> If the employee or his representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A), (B), and (C) of this section, insofar as the recovery is sufficient after deducting all litigation costs and expenses. Any excess recovery by the employee or representative shall be credited against any amount payable by the employer thereafter.

AS 23.30.015(i) subrogates the insurance carrier to all the rights of the employer when appropriate:

> If the employer is insured and the carrier has assumed the payment of compensation, the carrier shall be subrogated to all the rights of the employer.

The Alaska Workmen's Compensation Act was originally enacted in 1959,[42] long before judicial adoption of the doctrine of comparative negligence in *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975). The act did not expressly address the situation where the employer seeking reimbursement is contributorily negligent in causing the employee's injuries. Whether, in light of the policies behind adoption of comparative negligence in this state, the statute should be construed to deny reimbursement where the employer is shown to be concurrently negligent is thus a question of first impression before this court. Petitioners argue that we should adopt the rationale of *Witt v. Jackson*, 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961), a decision of the California Supreme Court which held that neither a negligent employer nor the plaintiff-employee may recover from third-party tortfeasors the amount which the employer paid to the employee under the applicable workmen's compensation scheme.[43] Since *Witt* was decided prior to the adoption of comparative negligence in California, petitioners further urge that the rule of that case be adopted in a modified form such that the employer's reimbursement is re-

41. *See Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976), *quoting State v. Wylie*, 516 P.2d 142, 145 (Alaska 1973) (footnote omitted), where we stated:

> Under the rational basis test, in order for a classification to survive judicial scrutiny, the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'

We have previously upheld Alaska's worker's compensation scheme, including the "exclusive liability" provision, against an equal protection challenge under the Alaska Constitution as having a "rational basis—even under the 'less speculative, less deferential, more intensified means-to-ends' application of that test." *Wright v. Action Vending Co.*, 544 P.2d 82, 87 (Alaska 1975) (footnote omitted). The compensation scheme likewise passes muster under the equal protection clause of the fourteenth amendment to the United States Constitution.

42. Ch. 193, SLA 1959.

43. It should be noted that the rule in *Witt v. Jackson*, 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961), differs from the absolute reduction of third-party tortfeasors' liability based on the percentage fault of the employer, which the rejection of joint and several liability doctrine urged above would have accomplished. Under the rule in *Witt*, the employee always would retain full recovery of damages since the reduction in reimbursement required by *Witt* would not exceed the amount of compensation paid to the employee by the negligent employer. Thus, *Witt* simply reallocates a portion of the damages between the employer and the third-party tortfeasors. It would not require the injured employee to bear any part of the employer's proportion of negligence liability.

duced only by the proportionate share of negligence attributable to it.

In California, the effect of the adoption of comparative negligence doctrine on the holding in the *Witt* case was recently decided by the California Supreme Court in *Associated Construction & Engineering Co. v. Workers' Compensation Appeals Board*, 22 Cal.3d 829, 150 Cal.Rptr. 888, 587 P.2d 684 (1978). In that case the court held:

> Applying the principle that the employer and third party should, to the extent consistent with the employer's statutory immunity from tort liability, share the burden of the employee's recovery as joint tortfeasors, we conclude that the concurrently negligent employer should receive either credit or reimbursement for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery.[44]

Courts in other jurisdictions have gone both ways on this issue. Pennsylvania allows a third-party tortfeasor to secure contribution from a negligent employer limited to the amount of compensation payments the employer has made to the employee.

*Brown v. Dickey*, 397 Pa. 454, 155 A.2d 836, 840 (1959). *See also Chamberlain v. Carborundum Co.*, 485 F.2d 31, 33 (3rd Cir. 1973); *Maio v. Fahs*, 339 Pa. 180, 14 A.2d 105, 110 (1940). North Carolina, instead of requiring limited contribution of a negligent employer, reduces the judgment against the third party by the amount of compensation paid if the third party can show the concurrent negligence of the employer. *Lovette v. Lloyd*, 236 N.C. 663, 73 S.E.2d 886, 892 (1953); *Brown v. Southern Railway Co.*, 204 N.C. 668, 169 S.E. 419 (1933).[45]

On the other hand, some jurisdictions have held that the employer's statutory right to reimbursement is not affected by its concurrent negligence in causing the injury. In New Mexico, *Royal Indemnity Co. v. Southern California Petroleum Corp.*, 67 N.M. 137, 353 P.2d 358, 363 (1960), held that the worker's compensation reimbursement provision allows a negligent employer to recover from third-party tortfeasors compensation paid to the employee under the act. Similarly, in *Schweizer v. Elox Division of Colt Industries*, 70 N.J. 280, 359 A.2d 857, 861 (1976), the court held:

> When the issue of an employer's concurrent negligence arises in the context of his credit claim based on a third party settlement, the board must determine the appropriate contribution of the employer since the employee's recovery does not represent a judicial determination of tort damages. Specifically, the board must determine (1) the degree of fault of the employer, and (2) the total damages to which the employee is entitled. The board must then deny the employer credit until the ratio of his contribution to the employee's damages corresponds to his proportional share of fault. Once the employer's workers' compensation contribution reaches this level, he should be granted a credit for the full amount available under section 3861. Only when such level of contribution has been reached, however, will grant of the statutory credit adequately accommodate the principle that a negligent employer should not profit from his own wrong. *Id.* (footnotes omitted).

---

44. *Associated Constr. & Engineering Co. v. Workers' Compensation Appeals Bd.*, 22 Cal.3d 829, 150 Cal.Rptr. 888, 896, 587 P.2d 684, 692 (1978). The California Supreme Court further elaborated its holding as follows:

> When the issue of an employer's concurrent negligence arises in a judicial forum, application of comparative negligence principles is relatively straightforward. The third party tortfeasor should be allowed to plead the employer's negligence as a partial defense, in the manner of *Witt*. Once this issue is injected into the trial, the trier of fact should determine the employer's degree of fault according to the principles of [*American Motorcycle Ass'n. v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978)]. The court should then deduct the employer's percentage share of the employee's total recovery from the third party's liability—up to the amount of the workers' compensation benefits assessed against the employer. Correspondingly, the employer should be denied any claim of reimbursement—or any lien under section 3856, subdivision (b)—to the extent that his contribution would then fall short of his percentage share of responsibility for the employee's total recovery.

45. *See also McDrummond v. Montgomery Elevator Co.*, 97 Idaho 679, 551 P.2d 966 (1976) (A third-party tortfeasor may invoke the concurrent negligence of the employer to defeat the employer's right to reimbursement under the workmen's compensation statute).

The employer renders itself absolutely liable for the scheduled and fixed compensation liability to the injured employee regardless of absence of negligence on its part or the contributory negligence of the employee. The employee, for his part, is guaranteed recovery for his common-law damages against contributing third-party tortfeasors or for his compensation award, whichever is greater, but he may not duplicate these recoveries. But the act is neutral insofar as the third-party tortfeasor is concerned, leaving him with his common-law liability to the injured employee, or, if the latter has been recompensed therefore to any extent by compensation payments, to the statutorily subrogated employer who has made those payments.[46]

Based on the foregoing, we think it apparent that cogent arguments can be made on either side of the reimbursement issue. Indeed, Professor Larson notes that "[P]erhaps the most evenly-balanced controversy in all of compensation law is the question whether a third party in an action by the employee can get contribution or indemnity from the employer, when the employer's negligence has caused or contributed to the injury."[47] Nevertheless, we have concluded that in light of the specific reimbursement provision in AS 23.30.015(g) the appropriate forum for resolution of the issue is with the legislature. Although we think there is considerable merit in adoption of the *Associated Construction & Engineering Co.* solution to the problem, we are reluctant to modify the existing legislative scheme set out in AS 23.30.015(g).

The orders of the superior court are Affirmed.

MATTHEWS, J., not participating.

BOOCHEVER, Chief Justice, dissenting.

I understand the majority opinion to hold that liability among joint tort-feasors is to be joint and several, rather than several, and that it is to be prorated according to the number of defendants. For the reasons set forth in the opinion, I can agree to joint and several liability, but I cannot agree to pro rata contribution among defendants regardless of their degree of fault. I believe that our decision in *State v. Guinn*, 555 P.2d 530 (Alaska 1976), controls in allocating liability among defendants in accordance with their degree of fault, rather than in equal shares. In *Guinn*, we stated:

> It is therefore necessary to remand this case to the superior court for a determination of the degrees of fault attributable to Guinn, the State and McGee. . .
>
> In summary, consideration of the State's arguments has led us to the following conclusions. Contributory negligence of the decedent was established as a matter of law. The effect of that negligence should be governed by the doctrine of comparative negligence. It is necessary that this case be remanded to the superior court for the purpose of attributing degrees of fault to the three parties in this litigation.

*Id.* at 542.

If a plaintiff is unable to collect the percentage share of the judgment from one of

---

**46.** The court in *Schweizer v. Elox Division of Colt Industries*, 70 N.J. 280, 359 A.2d 857, 861 (1976), further explained:

> We are not at all impressed by the argument that the Legislature should not be deemed to have intended a 'reward' to a 'wrongdoer'. The latter characterization is out of place in the industrial scene where human negligence by corporate agents and employees is commonplace and certainly carries no moral connotations. The legislative rationale for the existing scheme of the compensation act as a whole, read together with the employer subrogation and reimbursement provisions, is plain and quite defensible.

*See also Cacchillo v. H. Leach Machinery Co.*, 111 R.I. 593, 305 A.2d 541, 543–44 (1973) (Even though the employer's negligence contributed to injuries received by the employee, where the employer had compensated the employee pursuant to the statutory worker's compensation scheme, third-party defendants who were also liable to the employee were not entitled to recover contribution from the employer under the state Contribution Among Tortfeasors Act.)

**47.** 2A A. Larson, Workmen's Compensation Law § 76.10, at 14–287 (1976) (footnote omitted).

the defendants, it is only logical that the increased liability of the other defendants should be shared in accordance with their proportionate degrees of fault. *See American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). I agree that this method of apportionment is not in accord with the pro rata method of contribution prescribed in Alaska's statute for apportionment of damages among joint tort-feasors. AS 09.16.020(1). It does conform, however, to the legislative intent of justly apportioning damages among joint tort-feasors and the statutory requirement that "principles of equity applicable to contribution generally shall apply." AS 09.16.020(3).

In 1970, when the Alaska Uniform Contribution Among Tort-Feasors Act was passed, comparative negligence was not authorized. I believe that the Act should be construed in conformity with its general purpose to permit contribution in accordance with degree of fault, instead of an arbitrary pro rata basis, as the reason for dividing liability equally no longer exists. Without comparative negligence, sharing equally, furnished a rough approximation of a just result. For example, it was certainly preferable when two joint tort-feasors were liable, for them to share equally in paying the damages, than for one to go free simply because the plaintiff elected to recover from the other. Yet such a sharing is far from equitable when one defendant is 90 percent at fault and the other 10 percent. In fact, once comparative negligence is available and assuming that both defendants are responsible, requiring the defendant who is 10 percent responsible to bear 50 percent of the loss, the same amount as the one who was 90 percent at fault, is so arbitrary that it presents a serious question

whether constitutional due process rights are violated.[1]

The California Supreme Court has reached the same result suggested here although applying a rationale based on equitable partial indemnity. *See American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 195–199, 578 P.2d 899, 912–16 (1978).

I also respectfully disagree with the portion of the opinion which holds that third party defendants in tort actions may not reduce their total liability to the plaintiff in proportion to the percentage of negligence attributable to a plaintiff's employer. I believe that the amount of a third party defendant's liability should be reduced by the employer's percent of negligence up to a maximum of the employer's payments of compensation to the employee. Assuming that the third party defendant is 50 percent at fault and the employer is 50 percent at fault, with total damages of $10,000.00 and $5,000.00 paid by the employer under the compensation act, the third party's liability to the plaintiff would be $5,000.00 rather than $10,000.00. The employer, however, would not be entitled to recover any of the $5,000.00 in compensation benefits paid. The employee would still recover $10,000.00 ($5,000.00 in damages from the third party and $5,000.00 in compensation benefits from the employer).

The opposite result which would follow under the majority's holding is glaringly inequitable. The third party defendant would be required to pay $10,000.00, although only 50 percent at fault. The employer, who was also 50 percent at fault, would recover his full $5,000.00 previously paid under the compensation act so as to be free of any liability. Not only is the result

1. In determining a violation of substantive due process, we have applied the test of whether the action is arbitrary or whether the provision has no reasonable relationship to a legitimate state purpose. *Mobil Oil Corp. v. Local Boundary Comm.*, 518 P.2d 92 (Alaska 1974); *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447 (Alaska 1974). It would seem that the only legitimate state purpose for requiring equal contribution is its simplicity. Since we have now authorized comparative negligence, however, that purpose would no longer seem to justify the inequitable result of having defendants pay more than their degree of fault warrants. However, there may be a substantial question as to whether one liable in tort has any constitutionally protected right to contribution from another tort-feasor.

inequitable between the employer and third party, but in the example, the negligent employer is far better off than if no one had been at fault in causing the employee's injury. If no one were at fault, the employer would incur a $5,000.00 nonrecoverable liability. If the employer and a third party are negligent, however, the employer can recover the $5,000.00 from the amount paid by the third party to the employee.

I do not believe that such an absurd result was intended by our legislature. In my opinion, to permit the employer to recover compensation payments violates constitutional rights to equal protection under Alaska's Constitution. I respectfully differ from the majority's analysis of this equal protection issue. The opinion states:

> Brown & Root, Inc.'s equal protection claim is based on the differential treatment of tortfeasors who become involved in employee-employer tort claims as compared to all other tortfeasors. Only the former are prohibited from securing pro rata contribution from their concurrently negligent co-defendants, when the co-defendant in question happens to be the employer of the injured plaintiff. Review of equal protection challenges is governed by the standards set out in *State v. Erickson*, 574 P.2d 1 (Alaska 1978). The purpose of the Workmen's Compensation Act, including the exclusive liability provision attacked by Brown & Root[, Inc.] in this action, is the provision of financial and medical benefits for victims of work-connected injuries in the most efficient, most dignified, and most certain form. In accomplishing the goal of securing adequate compensation for injured employees without the expense and delay inherent in a determination of fault as between the employee and employer, the legislature apparently also found it necessary to limit the total amount of the employer's liability to the statutory award. We have concluded that there is a fair and substantial relationship between the legislative objective of providing guaranteed, expeditious compensation to the injured employee and the limitation on the employer's total

liability regardless of its percentage of fault, even though that limitation has the effect of denying the third-party tortfeasors the right to pro rata contribution from the employer. [footnotes omitted]

I agree that there is a fair and substantial relationship between the legislative objective of providing guaranteed expeditious compensation to the injured employee and limiting the employer's total liability regardless of fault.

As part of this system, it also seems logical not to require contribution from a negligent employer, otherwise the limitation of liability provided by the Workmen's Compensation statute could be removed indirectly. The majority's opinion, however, goes far beyond this when it not only bars contribution but actually requires a negligent employer to be reimbursed for any amounts he has paid an injured employee. Such a result does not bear any relation to the necessity for limiting an employer's liability. In fact, as discussed above, it gives the negligent employer a windfall at the expense of a third party. The right of the employee to recover Workmen's Compensation benefits is independent of the third party action brought in the state courts. The determination of the employer's degree of fault is not involved in the compensation proceedings, so even the minimal increase in efficacy of the compensation procedure attained as a result of not requiring evaluation of the employer's fault bears no relationship to having the employer assume at least a portion of his just share of liability in the third party proceeding. I can see no conceivable relationship between permitting the negligent employer to recover all compensation paid and the over-all purposes of the compensation act. Therefore, the differential treatment of tort-feasors involved in employer-employee tort claims from other tort-feasors cannot be justified to the extent that such tort-feasors are required to indemnify the negligent employer for compensation payments that do not exceed the employer's share of damages based on his or her degree of fault.

I believe that the statute providing for allocation of recovery from third parties may be construed so as to avoid such an unnecessary and unconstitutional result. After authorizing suits by an injured employee, AS 23.30.015 specifies in subsection (g):

> (g) If the employee or his representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (E)(1)(A), (B), and (C) of this section, insofar as the recovery is sufficient after deducting all litigation costs and expenses. Any excess recovery by the employee or representative shall be credited against any amount payable by the employer thereafter.

It is only "[i]f the employee . . . recovers damages from the third person," that the payment must be made to the employer "insofar as the recovery is sufficient after deducting all litigation costs and expenses."

Under the solution here suggested, the employee would not recover damages to the extent of his compensation benefits. The employee thus receives the full amount to which he is entitled (damages plus compensation). The recovery, however, does not include any amount for reimbursement of compensation so that the "recovery is [not] sufficient" for the purpose of reimbursing the employer. Admittedly, this is a strained construction of the statute, but we have not hesitated to apply such a liberal construction in the past when necessary to prevent obvious injustice and to accord with

what we believe to be the legislature's intent. *See Cooper v. Argonaut Insurance Cos.*, 556 P.2d 525 (Alaska 1976).

This solution is similar to that suggested by the California Supreme Court in *Witt v. Jackson*, 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961). It does no violence to the exclusive remedy provisions of the Alaska Workmen's Compensation Act, for the employer would not be required to contribute any more than the amount of compensation benefits for which he or she was already liable under the Act. The quid pro quo by which the employer's liability would be limited to benefits specified in the compensation act in exchange for making prompt payment to the employee, regardless of fault, would be unaltered. The negligent employer, however, would be unable to recover those payments unless they exceeded the proportion of damages represented by the employer's degree of fault.[2]

The solution which I have suggested does not encompass all of the situations which may arise. Until the legislature addresses the problems presented by the third party provisions of our present Workmen's Compensation statute and other problems arising out of the adoption of comparative negligence, a comprehensive solution is not possible. A reasonable solution to many of the variables suggested by this case are set forth in *Associated Construction & Engineering Co. v. Workers' Compensation Appeals Board*, 22 Cal.3d 829, 150 Cal.Rptr. 888, 896, 587 P.2d 684, 692 (1978).[3]

2. Similar results have been achieved in other jurisdictions. Pennsylvania allows a third party tortfeasor to secure contribution from a negligent employer limited to the amount of compensation payments the employer has made to the employee. *Maio v. Fahs*, 339 Pa. 180, 214 A.2d 105, 110 (1940); *Brown v. Dickey*, 397 Pa. 454, 155 A.2d 836, 840 (1959). North Carolina, instead of requiring limited contribution of a negligent employer, reduces the judgment against the third party by the amount of compensation paid if the third party can show the concurrent negligence of the employer. *Brown v. Southern Ry. Co.*, 204 N.C. 668, 169 S.E. 419, 420 (1933); *Lovette v. Lloyd*, 236 N.C. 663, 73 S.E.2d 886, 892 (1953).

3. The California court stated:
> Applying the principle that the employer and third party should, to the extent consistent with the employer's statutory immunity from tort liability, share the burden of the employee's recovery as joint tortfeasors, we conclude that the concurrently negligent employer should receive either credit or reimbursement for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery. (See *Arbaugh v. Procter & Gamble Mfg. Co.* (1978) 80 Cal.App.3d 500, 508–509, 145 Cal.Rptr. 608.)
> When the issue of an employer's concurrent negligence arises in a judicial forum, applica-

Thus, I would hold that contribution among joint tort-feasors be in accordance with their degrees of fault, although remaining joint and several. I would further reduce the amount of damages assessed against third parties by the amount of compensation benefits paid by an employer up to an amount equal to the employer's share of damages based on comparative fault.

tion of comparative negligence principles is relatively straightforward. The third party tortfeasor should be allowed to plead the employer's negligence as a partial defense, in the manner of *Witt.* Once this issue is injected into the trial, the trier of fact should determine the employer's degree of fault according to the principles of *American Motorcycle.* The court should then deduct the employer's percentage share of the employee's total recovery from the third party's liability—up to the amount of the workers' compensation benefits assessed against the employer. Correspondingly, the employer should be denied any claim of reimbursement—or any lien under section 3856, subdivision (b)—to the extent that his contribution would then fall short of his percentage share of responsibility for the employee's total recovery.

When the issue of an employer's concurrent negligence arises in the context of his credit claim based on a third party settlement, the board must determine the appropriate contribution of the employer since the employee's recovery does not represent a judicial determination of tort damages. Specifically, the board must determine (1) the degree of fault of the employer, and (2) the total damages to which the employee is entitled. The board must then deny the employer credit until the ratio of his contribution to the employee's damages corresponds to his proportional share of fault. Once the employer's workers' compensation contribution reaches this level, he should be granted a credit for the full amount available under section 3861. Only when such level of contribution has been reached, however, will grant of the statutory credit adequately accommodate the principle that a negligent employer should not profit from his own wrong. *Id.* [footnotes omitted]