**Frank P. YOUNG, Appellant,**

v.

**STATE of Alaska and Peter Kiewit Sons Company, Appellees.**

**No. 973.**

Supreme Court of Alaska.

June 13, 1969.

Warren A. Taylor, Fairbanks, for appellant.

Charles J. Clasby, Fairbanks, for appellee, Peter Kiewit Sons Co.

Howard Staley, Merdes Schaible, Staley & DeLisio, Fairbanks, for appellee State.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

In September 1965, appellant was a passenger in a vehicle which was then owned and operated by Edward Krivak. Appellant and Krivak were traveling on the Chena Hot Springs Road which at the time in question was under various stages of construction. At approximately Mile 50 on the Chena Hot Springs Road, in the area of an unnamed stream, Krivak lost control of his car which traveled off the road and crashed.

Subsequently appellant instituted a personal injury action against Krivak, appellee Peter Kiewit Sons Company, and appellee State of Alaska. Appellant alleged that Krivak was negligent in the manner in which he operated his vehicle and in his failure to timely observe that only a temporary single lane bridge spanned the stream which was located at Mile 50 on the Chena Hot Springs Road. Appellant further alleged that Peter Kiewit, the prime contractor under contract with the State of Alaska for construction of the Chena Hot Springs Road, was negligent because of its failure to post proper warnings in regard to this temporary single lane bridge. As to the State of Alaska, appellant asserted that its negligence was based on the failure to properly warn motorists of the existence of this temporary single lane bridge.[1]

Approximately one year after appellant had instituted this action, a release was

---

1. Peter Kiewit, in its answer, alleged that the road was private, closed to traffic, and that Krivak and appellant had gained access through a gate which was posted with both adequate warning and "no trespassing" signs. Peter Kiewit also cross-claimed against appellee State of Alaska alleging that the specifications of its contract required construction of the Chena Hot Springs Road to be without bridges. The State of Alaska cross-claimed against Peter Kiewit on the basis that a "save harmless" clause in their contract required Peter Kiewit to assume the ultimate rsponsibility for payment of damages, if any, to appellant.

entered into between appellant and Edward Krivak. This release reads as follows:

### RELEASE OF ALL CLAIMS

KNOW ALL MEN BY THESE PRESENTS:

That the Undersigned, being of lawful age, for and in consideration of Three Thousand and no/100 Dollars ($3,000.00) to the undersigned in hand paid, and other good and valuable consideration, receipt whereof is hereby acknowledged, do/does hereby and for my/our/its heirs, executors, administrators, successors, and assigns release, acquit and forever discharge Edward Krivak and his, her, their, or its agents, servants, successors, heirs, executors, administrators and all other persons, corporations, firms, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expense and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 12th day of September, 1965, at or near Chena Hot Springs Road near Fairbanks, Alaska.

It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releasees deny liability therefor and intend merely to avoid litigation and buy their peace.

The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release, it is understood and agreed, that the undersigned rely(ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

Signed, sealed and delivered this 20th day of April, 1967.

CAUTION: READ BEFORE SIGNING BELOW

| /s/ Carol C. Pundy | /s/ Frank P. Young | LS |
| Witness | /s/ Warren A. Taylor | LS |
| Witness | | LS |
| Witness | | |

On the basis of this document, appellees moved for summary judgment. In a memorandum opinion and order, the superior court concluded that appellees' motion should be granted and entered a partial judgment in which appellant's complaint was dismissed with prejudice as to appellee Peter Kiewit and appellee State of Alaska.

Appellant then appealed the superior court's determination of the summary judgment motion.

The principal ground which was urged by appellees in support of their motion for summary judgment was that, as a matter of law, the release of one joint tort-feasor operated as a release of all joint tort-feasors.[2] The long established common law release rule precludes recovery against one joint tort-feasor if another has been released from liability.[3] This common law rule is deemed controlling regardless of the fact that the releasing document purports to expressly reserve rights against other tort-feasors.[4] Dissatisfaction with the common law rule has been the catalyst which has led many jurisdictions to adopt means of ameliorating the rule's impact. In this regard the Supreme Court of New Jersey, in Breen v. Peck,[5] said:

> In the United States the English release rule has been under vigorous attack for many years. In 1923 Dean Wig-

more referred to it as a surviving relic which was based on false logic and, although accepted by many courts, was fortunately being repudiated in some states by judicial decisions and in others by legislative action. See Wigmore, 'Release to One Joint-Tortfeasor,' 17 Ill.L. Rev. 563 (1923). In his 1930 edition of Cooley on Torts, Professor Throckmorton referred to the growing tendency on the part of American courts to view with disfavor the English release rule and to replace it with the 'sound and reasonable' rule that unless the parties so intended a release should not absolve strangers thereto. * * * In 1941 Dean Prosser referred to the rule as 'at best an antiquated survival of an arbitrary common law procedural concept' and suggested that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer 'unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it.[6]

2. *See* W. Prosser, Joint Tort and Several Liability, 25 Cal.L.Rev. 413 (1937) (footnotes omitted), where the author states the following in regard to joint tortfeasors:

> 'Joint tort-feasor' is one of those unhappy phrases of indeterminate meaning, whose repitition has done so much to befog the law. Nobody knows what exactly is a joint tort. It has been said that 'no comprehensive general rule can be formulated which will harmonize all the authorities.' Various tests of 'jointness' have been proposed: the identity of a cause of action against each of two or more defendants; the existence of a like, or common duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiff; identity of the facts as to time, place, and result; whether the injury is direct and immediate, rather than consequential; responsibility of the defendants for the same *injuria*, as distinguished from the same *damnum*. An examination of the multitude of cases leads to the conclusion that 'joint tort-feasor' means radically different things to different courts, and often to the same court; that much of the existing confusion is due to an entire failure

to distinguish the different senses in which the term is used; and that the separate problems of joinder of parties in the same action, as a matter of procedure, and the substantive liability of two or more defendants for the same result, require separate consideration, and have very little in common.

3. Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556, 558 (1962); Annot., Release of One Joint Tortfeasor as Discharging Liability of Others: Modern Trends, 73 A.L.R.2d 403 (1960).

4. This result was considered necessary because only tort-feasors who had acted in concert could be joined, and there was but one "cause of action" which any release could extinguish. For a modern application of the rule see, e. g., Price v. Baker, 143 Colo. 264, 352 P.2d 90 (1959).

5. 28 N.J. 351, 146 A.2d 665, 668, 73 A.L.R.2d 390 (1958).

6. *See also* 4 A. Corbin, Contracts § 931, at 732–43 (1951); 1 F. Harper & F. James, Torts § 10.1, at 711–14 (1956); 2 S. Williston, Contracts § 338A, at 722–25 (3d ed. 1959). Mr. Justice Rutledge, sitting on the Court of Appeals for the District of Columbia, wrote in McKenna v. Austin, 77 U.S.App.D.C. 228, 134

As a result of the attacks upon the common law release rule, the devices which have been employed to ameliorate its harshness have taken the form of judicially created distinctions between covenants not to sue and releases; judicial distinctions between independent and concurring torts; and statutory exceptions to the common law release rule.[7] The foregoing has led one court to conclude that there now exists in the United States three rules of law which might conceivably be applied to the question of what effect should be given to a general release of one of several joint tort-feasors.[8] These three positions were articulated as follows:

(1) A release given one joint tort-feasor necessarily releases all others even though it expressly reserves rights against them. This is generally referred to as the common law rule.

(2) A release of one tort-feasor does not release other joint tort-feasors unless the release expressly so provides.[9]

(3) A release of one tort-feasor releases all others jointly liable unless the release expressly reserves rights against joint tort-feasors.[10]

A decision of the merits of this appeal involves first impression questions as to the common law release rule. In Hebel v. Hebel,[11] We concluded that an unemancipated minor could maintain an action against her mother based on the latter's negligence. In choosing not to adopt the common law rule of parental immunity in such circumstances,

F.2d 659, 662, 148 A.L.R. 1253 (1943) (footnote omitted), that:

The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule short-changes the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their ability.

7. Annot., Release of One Joint Tort-feasor as Discharging Liability of Others: Modern Trends, 73 A.L.R.2d 403 (1960). *See also* Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556, 559 (1962), where the court observed:

That the release of one tort-feasor must necessarily release all other tort-feasors who are jointly liable for the injury can hardly be regarded as an inexorable principle when its consequences may be avoided by the simple expedient of a reservation in the release of rights against the others. The an-

cient rule, on the contrary, rests upon two grounds; the first, that the injury resulting from the joint action of the wrongdoers is a single injury and constitutes basis for a single cause of action (see Duck v. Mayeu, [1892] 2 Q.B. 511; see, also, Havighurst, Settlements and Co-Obligors, 45 Corn.L.Q. 1, 6); the second, that it must be presumed that a settlement with one of the joint tort-feasors represents a full satisfaction of the entire claim and that any further recovery would involve double compensation for the same injury. (See Cocke v. Jennor, Hob. 66 [1614]; see, also, Havighurst, loc. cit., 45 Corn.L.Q. 1, 4).

8. Twentieth Century-Fox Film Corp. v. Winchester Drive-In Theatre, Inc., 351 F. 2d 925, 928–929 (9th Cir. 1965) (footnote omitted).

9. Cf. California Code of Civ.Proc. § 877.

10. This last position represents the rule adopted by the Restatement of Torts § 885(1) (1939). The Restatement's formulation reads as follows:

A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.

11. 435 P.2d 8, 9 (Alaska 1967).

we alluded to our previous decision in Ransom v. Haner [12] and stated that this court

> would not be bound by the mere weight of judicial precedent but rather by the rule which embodies the more persuasive reasoning.[13]

Our decisions in the *Ransom* and *Hebel* cases reflect instances where this court has exercised its authority to remold common law rules.[14] In our view the case at bar presents yet another instance where development of common law principles is appropriate. In light of our study of the historical antecedents of the common law release rule, the writings of the legal commentators on this subject, and judicial precedent, we are convinced that the common law release rule should not be adopted in Alaska.[15]

■ In our opinion the rule which will bring most clarity to this area of ambiguous and conflicting release rules is one under which a release of one tort-feasor does not release other joint tort-feasors unless such tort-feasors are specifically named in the release. We are of the further view that adoption of this rule will insure that the intent of the parties to the release is given effect and will greatly minimize the possibility of any party being misled as to the effect of the release.

Applying this rule to the facts of this case, we hold that the superior court erred in dismissing appellant's complaint with prejudice. In part, the document in question purports to release Edward Krivak

> and his, her, their, its agents, servants, successors, heirs, executors, administrators and all other persons, corporations, firms, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of * * * the accident * * * which occurred on or about the 12th day of September, 1965, at or near Chena Hot Springs Road.

■ Neither appellee Peter Kiewit nor the State of Alaska are specifically mentioned in the body of the release. In light of this circumstance, we hold that the release in question did not have the effect of releasing Peter Kiewit or the State of Alaska.

The judgment of the superior court dismissing the complaint with prejudice is reversed and the case remanded for further proceedings in accordance with this opinion.

12. 362 P.2d 282, 287 (Alaska 1961).

13. *Compare* Leavitt v. Gillaspie, 443 P.2d 61, 67–69 (Alaska 1968); Armstrong v. Armstrong, 441 P.2d 699, 701 (Alaska 1968).

14. *Compare* Alyeska Ski Corp. v. Holdsworth, 426 P.2d 1006, 1012 (Alaska 1967); Breen v. Peck, 28 N.J. 351, 146 A.2d 665, 673, 73 A.L.R.2d 390 (1958).

15. In Breen v. Peck, 28 N.J. 351, 146 A.2d 665, 673, 73 A.L.R.2d 390 (1958), the court made the following appropriate observations:

> A wrongdoer who never made any payment and merely stood by while his co-wrongdoer made a partial payment in settlement and obtained a release would obviously be in no just or equitable position to press the contention that the common-law rule should not be altered because that would deprive him of the windfall he seeks at the injured party's expense. Indeed, he would in any event receive a benefit from the partial payment of his co-wrongdoer, for it would ultimately be allowed as a credit on the claim against him.