**CRITERION INSURANCE COMPANY,**
Appellant,

v.

**Eugene LAITALA, Appellee.**

No. 6014.

Supreme Court of Alaska.

Jan. 14, 1983.

Doris R. Ehrens and Marcus R. Clapp, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellant.

Phillip J. Eide and Clifford W. Holst, Ely, Guess & Rudd, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

COMPTON, Justice.

## OPINION

Criterion Insurance Company appeals from a decision of the superior court granting Eugene Laitala summary judgment in a dispute involving the proper application of the Alaska Uniform Contribution Among Tortfeasors Act, AS 09.16.010–.060.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Winston Quildon, Eugene Laitala, John Grogan and Raymond Stith were drivers of automobiles involved in a multi-auto accident occurring on January 3, 1975. Albert Shoats, a passenger in the Quildon automobile, was injured. Criterion Insurance Company insured Quildon at the time of the accident.

In March 1975, Albert and Holly Shoats sued Quildon for personal injuries and related damages. In July 1975, the complaint was amended to include Grogan and Laitala as defendants. Eventually Grogan settled with the Shoatses for $21,775.00. Laitala was never served, and was dismissed from the case without prejudice on June 28, 1976.[1] The Shoatses never proceeded against Laitala again, and the statute of limitations ran on their claim against him on June 28, 1977.[2]

A trial in August 1977 resulted in a jury verdict finding the Shoatses' damages to be $450,000.00. The jury allocated sixty percent of the fault to Quildon and forty percent to Shoats. After computing pre-judgment interest, costs and attorney's fees, and deducting the $21,775.00 Grogan settlement, judgment was entered against Quildon for $339,677.22.

Quildon appealed, but during the pendency of the appeal the case was settled. Quildon paid the Shoatses $250,000.00, and dismissed the appeal. In return, the Shoatses signed a written agreement on September 21, 1978, entitled "Release of All Claims." It released Quildon and his insurance carrier, Criterion, from all claims, but did not specifically name Laitala. The document provides in part:

> That we, ALBERT SHOATS and HOLLY SHOATS, for the sole consideration of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) to us in hand paid, have released and discharged, and by these presents, do for ourselves, our heirs, executors, administrators, and assigns, release and forever discharge WINSTON QUILDON and his insurance carrier, THE CRITERION INSURANCE COMPANY, from any and all claims, demands, damages, costs, expenses, loss of services, actions, and causes of action arising from any act or occurrence up to the present time, and particularly on account of all personal injury, disability, loss, or damages of any kind already sustained, or that may hereafter be sustained, in consequence of an accident occurring on January 3, 1975 . . . .
>
> . . . .
>
> It is further understood and agreed that this is a full, entire, and final release of all claims of every nature and kind against all parties hereinabove named, including any survival causes of action, and releases all claims against the released parties for injuries that are known and unknown, suspected and unsuspected, whether or not disclosed in any medical reports . . . .
>
> It is further understood that the parties hereby released admit no liability whatever of any sort by reason of said loss, but on the contrary, expressly deny any negligence or liability for the incident; and that this payment as settlement is in compromise only, and is made to terminate further controversy respecting all claims for damages that we have heretofore asserted, or that our personal representatives might hereafter assert because of said incident.
>
> It is further understood, by virtue of this release, in addition to unequivocally releasing WINSTON QUILDON and his insurance carrier, THE CRITERION INSURANCE COMPANY, under any applicable policy of insurance, from all claims, covenants and agree [sic] that we will

---

1. The record is barren of any evidence as to why the Shoatses did not serve Laitala.

2. AS 09.10.240 reads in part:
   If an action is commenced within the time prescribed and is dismissed upon the trial or upon appeal after the time limited for bringing a new action, the plaintiff . . . may commence a new action upon the cause of action within one year after the dismissal or reversal on appeal.

not, either by ourselves or in concert with others, or by virtue of judicial proceedings of any kind whatsoever, make or cause to be made, acquiesce in, or assist in the bringing of any further action for damages arising out of the incident hereinabove described.

We hereby declare that the terms of this settlement have been completely read and are fully understood and are voluntarily accepted for the purpose of making a full and final compromise, adjustment, and settlement of any and all claims, disputed or otherwise, against WINSTON QUILDON and his insurance carrier, THE CRITERION INSURANCE COMPANY, on account of the damages above-mentioned.

On June 19, 1979, Criterion filed a legal malpractice suit against the attorneys it had employed to represent Quildon in the above action. That suit is pending in the Federal District Court in Fairbanks. The complaint alleges that the attorneys were negligent in handling Quildon's case. Among other allegations, Criterion charges that the defendant attorneys failed to communicate to Criterion an offer by the Shoatses to settle with Quildon for $21,725.00.

On August 1, 1979,[3] Criterion filed a complaint for contribution against Laitala whereby it sought to recover a pro rata share of the money it had paid the Shoatses.[4]

On March 12, 1981, the parties stipulated that for purposes of the instant case only:

Eugene Laitala was negligent and . . . his negligence was a proximate cause of the injuries received by Albert Shoats in the automobile accident of January 3, 1975, which accident is the subject matter of the instant contribution claim. Further, we agree that Eugene Laitala is a joint tort-feasor with Winston Quildon in that accident.

Eugene Laitala will also agree, for purposes of this contribution action only, that the amount paid by Criterion, i.e., $250,000 was not in excess of what was reasonable given the judgment obtained by Albert Shoats as a result of the trial.

Also on March 12, 1981, Laitala's attorney contacted the Shoatses' attorney and offered to settle on behalf of Laitala for $1,500.00. The Shoatses declined the offer to settle because they believed it might violate their September 1978 agreement with Criterion. Instead they made another agreement with Criterion whereby Criterion paid them an additional $2,000.00 and they executed a document expressly releasing Laitala. On March 26, 1981, they filed a document in the superior court in which they acknowledged full satisfaction of the judgment against Quildon.

Both Laitala and Criterion moved for summary judgment. Criterion argued that the September 1978 agreement constituted a satisfaction of judgment for purposes of Alaska's Uniform Contribution Among Tortfeasors Act, and that Laitala should thus have to contribute his pro rata share of the $252,000.00 Criterion had paid the

---

3. Although the statute of limitations had already run on the Shoatses' claim against Laitala, Criterion's contribution suit was nonetheless timely. AS 09.16.030(c) provides:

> If there is a judgment for the injury or wrongful death against the tortfeasor seeking contribution, any separate action by him to enforce contribution must be commenced within one year after the judgment has become final by lapse of time for appeal or after appellate review.

Laitala's argument that AS 09.16.030(c) does not apply to an action by a contribution claimant who enters into a post-judgment settlement is, in our view, without merit. The only other section of the Alaska Uniform Contribution Among Tortfeasors Act which deals with when

a contribution action must be brought applies only "[i]f there is no judgment." AS 09.16.-030(d). Here, there was a judgment against Criterion, so AS 09.16.030(c) is clearly applicable. Criterion's suit against Laitala is timely under that section since it was commenced within one year after the time that appellate review would have occurred had Criterion not dismissed its appeal pursuant to the September 1978 settlement agreement with the Shoatses. *See generally* Annot., 57 A.L.R.3d 833 (1974).

4. Criterion was barred from seeking contribution from Grogan, the third joint tortfeasor, because Grogan had previously settled with the Shoatses. *See* AS 09.16.040(2).

Shoatses. Laitala contended that he did not have to contribute because the September 1978 post-judgment agreement did not constitute a satisfaction of judgment. Assuming arguendo that the post-judgment agreement constituted a satisfaction, and he did have to contribute, Laitala claimed he should have to pay only his pro rata share of $21,725.00, the amount the Shoatses demanded from Quildon in order to settle before trial.

The superior court granted summary judgment for Laitala, holding that he did not have to contribute. Alternatively, the superior court held that if the supreme court reversed the summary judgment on appeal, Criterion could recover no more than a pro rata share of $21,725.00.[5]

For the following reasons, we reverse the superior court.

## II. CONTRIBUTION

The central question presented on appeal concerns the effect of the September 1978 agreement executed between the Shoatses and Criterion. As all parties agree, the Alaska Uniform Contribution Among Tortfeasors Act (Act), AS 09.16.010–.060, establishes a right to pro rata contribution if the agreement is construed as a "satisfaction of

judgment" which extinguished the liability of other tortfeasors.[6] In contrast, if the agreement did not discharge other tortfeasors from liability, it is equally plain that Laitala would not be obligated to contribute.[7]

In determining whether the September 1978 agreement is a satisfaction which extinguished Laitala's liability, and thus whether Laitala must contribute, we find it useful to underscore that the purpose of the Act is to ensure that all joint tortfeasors pay their fair share of the damages rather than to have only one joint tortfeasor pay all the damages. The House Judiciary Committee said of the bill which became the Act:

> This bill proposes the adoption of the Uniform Contribution Among Tortfeasors Act, prepared by the National Conference of Commissioners on Uniform State Laws in 1955. The national conference's prefatory note to this Act states in part:
>
> "This uniform act establishes the right of a person liable for damages for an unintentional wrong to compel others, who are liable with him for the same damages, to share in discharging the common liability.

> The recovery of a judgment for an injury or wrongful death against one tortfeasor does not of itself discharge the other tortfeasors from liability for the injury or wrongful death unless the judgment is satisfied. The satisfaction of the judgment does not impair any right of contribution.

---

**5.** Actually the superior court used the figure "$21,775.00" instead of "$21,725.00." We conclude, however, that the figure $21,775.00 constitutes a clerical error.

**6.** AS 09.16.010(a) and (d) and AS 09.16.030(e), read together, indicate that Laitala must contribute if the September 1978 agreement extinguished the liability of other tortfeasors. AS 09.16.010(a) provides:

> Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

AS 09.16.010(d) provides:

> A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

AS 09.16.030(e) provides:

**7.** AS 09.16.040 provides:

> *Release or covenant not to sue.* When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death
>
> (1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

"Under the existing law an injured person may select whom he wishes to sue from among those jointly liable to him for an injury. He need not sue all. He may settle out of court or he may sue all and collect the full amount of the judgment from one. Under the prevailing law rule [sic] there is no recourse by one who voluntarily pays or who is forced to pay the common liability, against the others who are equally liable to the injured party but who have escaped payment.

"This act would distribute the burden of responsibility equitably among those who are jointly liable and thus avoid the injustice often resulting under the common law."

1970 House Journal 437, *quoted in Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426, 430 n. 8 (Alaska 1979).

The main requirement for a post-judgment agreement to be considered a satisfaction is that it terminate the litigation. *See Raleigh v. Peterson,* 165 F.Supp. 47, 52 (M.D.Pa.1958) (applying Pennsylvania law); *State v. County of Sullivan,* 54 A.D.2d 29, 386 N.Y.S.2d 253, 256–57 (1976) (Koreman, P.J., dissenting), *rev'd,* 43 N.Y.2d 815, 402 N.Y.S.2d 291, 373 N.E.2d 291 (1977) (opinion adopting dissent); *Rock v. Reed-Prentice Division of Package Machinery Co.,* 39 N.Y.2d 34, 382 N.Y.S.2d 720, 346 N.E.2d 520, 523 (1976). In the present case, Criterion paid the Shoatses money and dismissed its appeal. The Shoatses, in turn, promised not to bring any further actions relating to the automobile accident. The relevant portion of the agreement provided:

[W]e will not, either by ourselves or in concert with others, or by virtue of judicial proceedings of any kind whatsoever, make or cause to be made, acquiesce in, or assist in the bringing of any further action for damages arising out of the incident hereinabove described.

In our view, we think it plain that the functional purpose of the September agreement, when viewed in whole, was to discharge the liability of all parties jointly responsible for the Shoatses' injuries. Central to this conclusion is the fact that the statute of limitations had long since run on all other potential tortfeasors. Thus, the Shoatses could not have intended future proceedings against Laitala or others.[8] We note also that the amount obtained by the Shoatses under the post-judgment agreement, $250,000.00, reflected a compromise of a jury's assessment of all damages resulting from the accident. Though undeniably only a portion of the jury award, the negotiated settlement figure balanced the full award of damages with the risk of modification upon appeal. In such circumstances, we agree with Criterion that the settlement constitutes a satisfaction of the Shoatses' claims.[9]

---

**8.** This fact distinguishes the present case from *Young v. State,* 455 P.2d 889 (Alaska 1969). *See also Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916 (Alaska 1977). In *Young* a release given to Krivak also released "all other persons . . . from any and all claims, . . . [and] causes of action . . . which the undersigned now has . . . or which may hereafter accrue on account of . . . the accident . . . ." 455 P.2d at 890. We held that such a release was not effective to prevent the plaintiff from proceeding against other unnamed parties. We stated:

In our opinion the rule which will bring most clarity to this area of ambiguous and conflicting release rules is one under which a release of one tort-feasor does not release other joint tort-feasors unless such tort-feasors are specifically named in the release. We are of the further view that adoption of this rule will insure that the intent of the parties to the release is given effect and will greatly minimize the possibility of any party being misled as to the effect of the release. *Id.* at 893. Here, however, the fact that the statute of limitations had run against all other potential parties before execution of the document in question necessarily means that the Shoatses intended not to proceed against others and thus no reason exists to apply the *Young* rule.

**9.** Since we hold that the post-judgment settlement was a satisfaction within the purview of the Act, Criterion's payment of $2,000.00 to the Shoatses in order to obtain a document expressly releasing Laitala had no legal significance. The 1981 document, as well as the $2,000.00 paid to the Shoatses as consideration for the execution of the agreement, therefore have no bearing on our disposition of the issues raised on appeal.

We further note that our conclusion that the post-judgment agreement should be viewed as a satisfaction for purposes of determining Laitala's contribution obligations is consistent with the equitable purposes of the Act. The jury found that Quildon drove negligently and that his negligence was a contributing cause of injuries to Albert Shoats. Laitala admits that he too drove negligently and that his negligence also contributed to causing Albert Shoats' injuries. Laitala further agrees that the post-judgment agreement was a reasonable evaluation of the Shoatses' damages. Yet, Laitala has paid nothing. Thus, unless Laitala is required to contribute, he will escape all liability, and the full burden will be borne by Criterion, the insurance carrier for joint tortfeasor Quildon. Such an inequitable allocation of the burden of responsibility cannot be countenanced in the present circumstances. We conclude, in sum, that the September 1978 agreement is a satisfaction and that Laitala must contribute.[10]

### III. COMMON LIABILITY

We next address whether the superior court properly limited Laitala's contribution share to his pro rata share of $21,725.00. The Act provides that a joint tortfeasor must contribute a pro rata share of the common liability. AS 09.16.010(b). The Act further provides, though, that a tortfeasor "is not entitled to recover contribution from another tortfeasor ... in respect to any amount paid in a settlement which is in excess of what was reasonable." AS 09.16.010(d).

Laitala stipulated that his negligence was a contributing cause of the Shoatses' injuries and that the post-judgment settlement of $250,000.00 was a reasonable estimation of the Shoatses' injuries. Laitala submits, though, that for purposes of ascertaining the amount of contribution, the common liability should be limited to $21,725.00, the amount of the Shoatses' settlement offer to

Quildon. Laitala submits that either Criterion or Criterion's attorney necessarily acted negligently in failing to settle the case. Laitala thus argues that any amounts in excess of the pretrial settlement offer are "unreasonable" and, by application of AS 09.16.010(d), are thus not subject to a contribution claim.

■ We conclude, however, that the right to challenge the reasonableness of the post-judgment settlement pursuant to AS 09.16.010(d) is limited, at least under the facts of the present case, to only a determination of whether the amount was reasonable in light of the Shoatses' injuries and the likelihood of the jury award being upheld on appeal. Neither Criterion nor its attorney owed any duty to Laitala with respect to their disposition of the Shoatses' offer to settle with Quildon. The settlement offer did not include a release of any possible claims against Laitala. Moreover, at the time of the offer, the statute of limitations had not as yet run against Laitala. The Act clearly contemplates that a joint tortfeasor may remove himself entirely from the case by settling for less than the entire liability. See AS 09.16.040. Criterion was thus free to reach a settlement with the Shoatses on behalf of its client, Quildon, without consideration of any related claims against Laitala. Presumably, had the Shoatses settled with Quildon, the Shoatses may then have proceeded against Laitala to recover the balance of the liability. To allow Laitala to challenge the reasonableness of the post-judgment settlement by reference to conduct which had no foreseeable link to his ultimate liability would impermissibly interfere with the tripartite relationship between Quildon, Criterion, and Criterion's attorney. While the facts surrounding the pretrial settlement offer may well be relevant in allocating responsibility between Quildon, Criterion and Criterion's attorney, such facts have no bearing on Laitala's contribution obligation.

---

**10.** Laitala also argues that the post-judgment settlement is not a satisfaction because it fails to comply with certain formalities. We find Laitala's arguments regarding formalities un-

persuasive. The critical question is whether the post-judgment settlement extinguished Laitala's liability to the Shoatses, not whether the agreement satisfied certain formalities.

We therefore conclude that for purposes of ascertaining contribution the common liability is $250,000.00 and that Laitala must contribute his pro rata share.[11]

REVERSED.

RABINOWITZ, J., concurring.

I agree with the court's holding that Criterion has a right to contribution from Laitala, but disagree with its analysis.

AS 09.16.010(d) provides that a "tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury ... is not extinguished by the settlement ..." The court asserts that under this provision Laitala "would not be obligated to contribute" if the 1978 agreement between the Shoatses and Criterion "did not discharge other tortfeasors from liability." If the majority's construction of AS 09.16.010(d) is correct, I cannot see how Criterion is entitled to any contribution from Laitala. The statute of limitations ran on the Shoatses' claim against Laitala in 1977. Therefore, the 1978 agreement, regardless of whether it is construed as a satisfaction, could not and did not discharge Laitala's liability to the Shoatses. Its failure to do so should, under the court's construction of AS 09.16.010(d), bar any contribution action by Criterion against Laitala.[1]

I think that the court has misconstrued AS 09.16.010(d). That provision was designed to accommodate an agreement between a tortfeasor and the injured party in which the injured party, in exchange for a payment less than the entire liability, discharged the settling tortfeasor's liability without discharging the liability of other tortfeasors.[2] The liability discharge requirement found in AS 09.16.010(d) was intended to protect a non-discharged tortfeasor in this situation from being sued by both the settling tortfeasor and the injured person.[3] In my view, AS 09.16.010(d) has no application in a case where at the time the settling tortfeasor entered into the agreement with the injured person, the other tortfeasor was protected by the statute of limitations. Therefore, Criterion, which has paid more than its pro rata share of the Shoatses' damages, should be allowed to recover contribution from Laitala, despite the fact that its agreement with the Shoatses did not discharge Laitala's liability.

I agree with all other aspects of the court's opinion.

**11.** The Act provides that in determining the pro rata shares of tortfeasors "their relative degrees of fault shall not be considered." AS 09.16.020(1). We question whether the rule "distribute[s] the responsibility equitably among those who are jointly liable." *Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426, 430 n. 8 (Alaska 1979), (quoting 1970 House Journal 437). While the question of whether the Act should be amended is a matter committed to the judgment of the legislature, it is our view that where one joint tortfeasor seeks contribution from another, the tortfeasor's "pro rata share" should mean a share proportionate to his comparative fault. We add that such a rule would not undermine the rule of joint and several liability announced in *Arctic Structures, Inc. v. Wedmore.* We invite legislative consideration of this aspect of the Act.

**1.** The court avoids the conflict between its construction of AS 09.16.010(d) and the facts of the present case by failing to discuss whether the 1978 agreement could, in any meaningful

sense, be said to have extinguished Laitala's liability to the Shoatses. It seems more reasonable to conclude that since Laitala was protected by the statute of limitations in 1978, the Shoatses and Criterion probably did not consider him in reaching their agreement.

**2.** Uniform Contribution Among Tortfeasors Act § 1(d) commissioners' comment d, 12 U.L.A. 65 (1975); Uniform Contribution Among Tortfeasors Act § 2(3) commissioners' note 3, 9 U.L.A. 236 (1957) (1939 version of Act, revised 1955).

**3.** Without this requirement, it is conceivable that a tortfeasor could settle for far less than the total damages the injured person was seeking and then obtain contribution from the non-discharged tortfeasor who would still be liable for the remainder of the injured person's damages in a later lawsuit. AS 09.16.040(2) would protect the first tortfeasor from a contribution action by the second.