Oliver FELLOWS and Georgiann Fellows, Petitioners,

v.

TLINGIT–HAIDA REGIONAL ELECTRICAL AUTHORITY, Defendant,

v.

SITKA TELEPHONE COMPANY, Respondent.

No. S–1113.

Supreme Court of Alaska.

July 17, 1987.

Mary E. Guss, Clifford H. Smith, A.P.C., Ketchikan, for petitioners.

Peter R. Ellis, Ellis Law Offices, Inc., Ketchikan, for respondent Sitka Telephone Co.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON, and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Plaintiffs Oliver and Georgiann Fellows petitioned for review of an order of Judge Henry C. Keene, limiting their potential recovery in this action from third-party defendant Sitka Telephone Company (Sitka) to $71,618.50. This figure represents one-half of the amount paid directly to the Fellows by the Tlingit-Haida Regional Electrical Authority (THREA) pursuant to their settlement agreement. Primarily at issue here is the effect of that agreement, in which THREA assigned to the Fellows all rights that THREA might have against Sitka, including any right to contribution.

Upon granting the petition for review, the parties were requested specifically to brief two issues:

(a) Should the petitioners recover the difference between the total sum that they have already recovered ($343,237) and the $1.1 million figure in THREA's confession of judgment; and

(b) Should the petitioners recover the difference between the amount they recovered and one-half the sum of $343.237?

We now reverse the order of the superior court, based on our view that $343,237 represents the common liability of THREA and Sitka and that Sitka may be liable for half of this sum.

## I. BACKGROUND.

In August 1981, Oliver Fellows was injured when he fell from an overheight load of lumber being moved by his employer, Island Logging, Inc. (Island). Fellows, Island owner Roger Gildersleeve, and another worker, Marvin Jordan, were lifting overhead power lines to permit the truck to pass. The accident occurred when Jordan contacted a "hot" wire. The electrical jolt propelled Jordan into Fellows, who fell from the truck onto the ground and consequently sustained serious injuries.

Five power lines stretched across the road. The "hot" wire and the one immediately below it belonged to THREA. The remaining three wires belonged to Sitka and the Klawock Tlingit-Haida Community Counsel TV System.[1] A joint use agreement with THREA permitted Sitka to hang its wires on poles owned by THREA.

In August 1983, the Fellows sued THREA for negligence, seeking damages for Oliver's injuries and Georgiann's loss of consortium. THREA subsequently filed an amended answer and a third-party complaint against Sitka, alleging that Sitka had violated their joint use agreement. THREA filed a second third-party complaint against Island and owner Gildersleeve (Island/Gildersleeve), alleging violations of certain statutory safety standards,[2] and seeking indemnity for Island/Gildersleeve's statutory violations pursuant to AS 18.60.685(b).[3] The Fellows later attempted to amend their complaint to sue Sitka directly, but the applicable statute of limitations had run and barred that claim.

In June 1985, the Fellows and THREA executed a settlement agreement in which THREA agreed to pay the Fellows $343,-237—$180,000 in cash and the remaining $163,237 for purchase of an annuity for the Fellows' benefit. Of the $343,237 total settlement, THREA directly paid only $143,-237; Island/Gildersleeve paid the remaining $200,000, apparently in settlement of its liability under AS 18.60.685(b).[4] THREA assigned "its third-party rights, claims and obligations attendant thereto versus Sitka Telephone to [the] Fellows to pursue on its behalf under Alaska Statute [sic], including but not limited to, its right of contribution from a joint tort feasor, [and] the unpaid balance of monies due from the confession of judgment." THREA then executed a confession of judgment in favor of the Fellows for $1.1 million plus interest, costs and attorney's fees. In exchange, the Fellows promised not to execute against THREA on the confession of judgment but only to seek the balance due from Sitka.

Sitka filed a motion in the superior court seeking to limit its potential liability to one-half of the $143,237 "actually paid" by THREA, or $71,618.50. The court granted Sitka's motion, limiting the Fellows' potential recovery as assignees of THREA's contribution action to $71,618.50. It expressly ordered "that Plaintiffs can be assigned no cause of action for a breach of contract and no cause of action for indemnity by virtue of the Settlement Agreement or any assignment of rights thereunder to Plaintiffs by either [THREA] or [Island/Gildersleeve]." The Fellows then petitioned this

---

1. Klawock TV was dismissed from this action due to its lack of funds.

2. *See* AS 18.60.670–.695.

3. AS 18.60.685(b) provides:
   If a violation of AS 18.60.670—18.60.695 results in physical or electrical contact with an overhead high voltage line or conductor, the violator is liable to the owner or operator of the high voltage line or conductor for all damage to the facilities and for all liability incurred by the owner or operator as a result of the unlawful activities.

4. Island was a named party to the Fellows-THREA settlement agreement but Island/Gildersleeve apparently paid the $200,000 pursuant to a separate agreement with THREA. The Alaska Workers' Compensation Act prevented the Fellows from suing Island/Gildersleeve directly because it provides an exclusive remedy for work-related injuries. *See* AS 23.30.055.

court for review of the superior court's order.

## II. DISCUSSION.

### A. The Fellows Cannot Recover the Full Amount of the Difference Between the $343,237 Already Recovered and the $1.1 Million Confession of Judgment.

The Fellows contend that they should be able to recover from Sitka the $1.1 million confession of judgment less the $343,237 already received once they establish that Sitka was a negligent tortfeasor and that the judgment reasonably represents the losses they incurred as a result of the underlying tortious conduct.

The heart of the Fellows' argument is based on AS 09.16.040, which provides:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death
>
> (1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

This section abrogates the common law rule that the release of one joint tortfeasor releases all joint tortfeasors.[5] It allows an injured plaintiff to settle with one potential tortfeasor without releasing the remaining potential joint tortfeasors from liability.[6]

The amount of any settlement, however, must be subtracted from any judgment ultimately obtained against the non-settling tortfeasors.[7] The settlement discharges the settling tortfeasor's potential liability for contribution.[8]

■ The Fellows maintain that they can recover on their tort claims from Sitka pursuant to subsection .040(1) because their settlement agreement with THREA did not release Sitka from liability. This would be true if they had a presently existing negligence claim against Sitka. However, because the limitation's period for bringing a direct claim against Sitka has expired, the Fellows cannot now institute such a claim; they cannot revive their lost negligence cause of action through their assertion of the assigned right of contribution. As assignees of THREA, they are entitled to no greater right against Sitka than THREA would have absent the assignment.[9] The $1.1 million confession of judgment in the underlying negligence action is irrelevant to the action based upon the contribution assignment.

### B. The Fellows Can Recover One-Half of $343,237 Under Their Contribution Assignment if Sitka is Found Liable.

AS 09.16.010 establishes THREA's right of recovery against Sitka and thus determines the parameters of the Fellows' assignment. This section provides in pertinent part:

> (a) Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is

---

5. *See generally* W. Keeton, D. Dobbs, R. Keeton, and D. Owen, Prosser and Keeton on the Law of Torts § 49, at 332 (5th ed. 1984).

6. AS 09.16.040(1); Unif. Contribution Among Tortfeasors Act § 4, 12 U.L.A. 98 (1975).

7. AS 09.16.040(1).

8. AS 09.16.040(2).

9. Under AS 09.16.010, THREA's right of contribution against Sitka is for amounts paid in excess of its pro rata share of their common

liability. The Fellows contend that AS 09.16.010 and .040 are inconsistent, that section .010 should apply only to those cases which have gone through trial with all defendants and section .040 to those in which a settlement with one defendant is reached before trial. We do not find the statutes inconsistent. Section .010 establishes the right of one joint tortfeasor against another for contribution; section .040 enables a plaintiff to pursue its causes of action against different joint tortfeasors separately.

a right of contribution among them even though judgment has not been recovered against all or any of them.

(b) The right of contribution exists only in favor of a tortfeasor *who has paid more than that tortfeasor's pro rata share of the common liability,* and the total recovery of that tortfeasor is limited to the amount paid in excess of the pro rata share. No tortfeasor is compelled to make contribution beyond the tortfeasor's pro rata share of the entire liability.

[Emphasis added.]

THREA agreed to pay the Fellows $343,-237 in their settlement agreement. As mentioned previously, of this total, THREA paid $143,237, and Island/Gildersleeve paid the balance of $200,000, apparently to satisfy its obligation to indemnify THREA under AS 18.60.685(b).[10] Sitka accordingly takes the position that its potential liability for contribution as a joint tortfeasor equals a pro rata share (one-half) of the $143,237 "common liability" paid to the Fellows by THREA, or $71,618.50.[11]

■ In our view, the common liability for the underlying tort here is the full $343,237 settlement amount. Based on the settlement agreement, THREA owed the Fellows this sum; any right to indemnity from Island/Gildersleeve that THREA may have had existed independently of THREA's negligence liability.[12] There is no reason that Sitka should benefit from the happenstance that its co-tortfeasor may be entitled to indemnification from a third party.[13] AS 09.16.010(b) dictates that a settling tortfeasor can recover contribution in the amount it has paid in excess of its pro rata share of the common liability.[14]

---

**10.** *See supra* note 3.

**11.** Sitka's pro rata share is one-half of the common liability because only THREA and Sitka are potential joint tortfeasors. We reject Sitka's contention that Island/Gildersleeve exposed itself to liability as a joint tortfeasor by violating the statutory requirements of AS 18.60.680. An employer is immune from a direct action by its employees based on the exclusivity provision of the Alaska Workers' Compensation Act, AS 23.-30.055. To expose an employer to an action for contribution would subvert the policy behind this provision. We have previously held that a third-party's cross-claim for indemnity and contribution against an employer is barred. *E.g., State v. Wien Air Alaska,* 619 P.2d 719 (Alaska 1980); *see also* W. Keeton, D. Dobbs, R. Keeton, and D. Owen, *supra* note 5, § 50, at 339–40.

We note that Island/Gildersleeve's liability to THREA was determined by agreement of the parties. We express no opinion as to whether a statutory indemnity clause, as opposed to a contractual indemnity clause, is enforceable against an employer and thus overrides the exclusive remedy provision of the worker's compensation act. *Cf. Golden Valley Elec. Ass'n v. City Elec. Serv.,* 518 P.2d 65, 66–67 (Alaska 1974) (action for implied contractual indemnity against employer may not be maintained by third party held liable in tort to injured employee); *Manson-Osberg Co. v. State,* 552 P.2d 654, 659 (Alaska 1976) (express indemnity clause enforceable, despite exclusive liability provision).

**12.** In this regard we observe that the settlement agreement specifically stated: "The parties agree that Third Party Defendant Island Log is a party to this agreement but that all obligations created hereunder to plaintiffs are the responsibility of THREA."

**13.** Indemnity is best viewed as a private matter between indemnitor and indemnitee. Liability insurance, for example, establishes by contract the insured's right to indemnity from the insurer. If THREA had obtained insurance coverage for this accident and received $200,000 from its insurer, the common liability of THREA and Sitka would not be affected by the existence of the insurance policy; their common liability for the accident would remain $343,237. If thereafter THREA recovered one-half of the $343,237 in contribution from a joint tortfeasor, it might be required to reimburse the indemnifying insurance company for its windfall of $28,281.50 ( = $200,000 + ½ ($343.237)—$343,237) as a matter of contract law or constructive trust doctrine. As no contract for indemnity is involved here, the constructive trust doctrine will guard against such a windfall in this case. *See generally* Restatement of Restitution § 160 (1937). Along similar lines, if Island/Gildersleeve had paid the full $343,237, it would be subrogated to THREA and could recover $171,618.50 from Sitka as subrogee. *See generally* Restatement of Restitution § 162 (1937). Any argument that in this situation THREA could not recover any amount in contribution because it "paid nothing" is thus flawed.

**14.** Sitka has asserted that Island/Gildersleeve contributed $200,000 in cash "of which $180,000 was paid to the Plaintiffs" and $20,000 combined with THREA's $143,237 to purchase an annuity for their benefit, such that THREA "actually paid" only $143,237 in settling the claims against it. On another occasion Sitka has indicated, as do the Fellows, that Island/Gildersleeve paid THREA, and THREA then proceeded to pay the Fellows the total amount due

The purpose of the Uniform Contribution Act is "to ensure that all joint tortfeasors pay their fair share of the damages." *Criterion Ins. Co. v. Laitala*, 658 P.2d 112, 115 (Alaska 1983). Contribution is an equitable doctrine adopted to remedy the unfairness of the common law rule allowing one of several tortfeasors to bear responsibility for the entire loss.[15] By virtue of its settlement agreement, THREA has borne the full amount of the tort liability here; Sitka must shoulder its share if it is ultimately found to be a tortfeasor. Since the Fellows as assignees stand in THREA's shoes, they can recover one-half of $343,237, or $171,618.50, if they establish Sitka's liability.[16]

The decision of the superior court is therefore REVERSED.

BURKE, Justice, with whom MOORE, Justice, joins, dissenting.

Because I believe this case was decided correctly in the court below, I dissent.

I am authorized to state that Justice MOORE shares this view.

under the settlement. The sequence of payments is irrelevant.

15. *See* AS 09.16.020(3) ("[P]rinciples of equity applicable to contribution generally shall apply."). *See generally* W. Keeton, D. Dobbs, R. Keeton, and D. Owen, *supra* note 5, § 50, at 336–38.

16. We reject Sitka's argument that no recovery is possible because its liability was not extinguished by the settlement agreement as required by AS 09.16.010(d). Once all direct litigation against named parties is foreclosed, the settling defendant is entitled to contribution from non-settling tortfeasors, even those dismissed due to the statute of limitations bar. *Laitala*, 658 P.2d at 113–16.

It should also be noted that the apportionment of damages provisions of AS 09.17.080(d) are not applicable here, since this cause of action accrued prior to June 11, 1986. *See* ch. 139, § 9, SLA 1986.